THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
MICHAEL B. McVEY, Defendant-Appellee.

Third District   No. 3—88—0704

Opinion filed July 13, 1989.

Marc Bernabei, State's Attorney, of Princeton (Walter P. Hehner, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Stephen Omolecki, of State Appellate Defender's Office, of Ottawa, for appellee.

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Michael B. McVey, was charged by uniform citation and complaint with driving while his license was revoked (Ill. Rev. Stat. 1987, ch. 95½, par. 6—303(a)). Prior to trial, he filed a motion to quash the warrantless arrest and to suppress the evidence. Following a hearing, the trial court granted his motion. The State appeals.

At the hearing on the motion, Tiskilwa police officer Richard Taylor testified that on September 23, 1988, at about 11:45 p.m., he was riding his bicycle through Tiskilwa Park. He noticed two people sitting on a park bench and advised them to leave the park since it closed at 11 p.m. He stated that the two people were violating a village ordinance by remaining in the park after it closed. He further stated that as he continued riding by, he heard a female yell something at him. Thereafter, he observed the two people get into a red car and drive out of the park. He noticed that after the car left the park it pulled off onto the side of the road near the post office.

Officer Taylor then rode his bike home, got into his squad car, and returned to identify the two people, who were still in the red car parked near the post office. Taylor pulled up behind the car and stopped without activating his squad car's mars lights. As he was about to exit his vehicle, the passenger in the red car, Denise Harris, got out and asked Taylor if there was a problem. Taylor testified that he knew Denise personally. Taylor told Denise that he was checking to see who was in the car and why they were sitting there. Denise responded that the other person in the car was a friend of hers from California and they were just talking.

The defendant then got out of the car and asked Taylor if there was a problem. Taylor asked the defendant if he had any form of iden-

tification. The defendant gave the officer a California driver's license. Taylor testified that he then told the defendant to go back to his vehicle and have a seat, because he was going to run a computer check of the defendant's license. The license check revealed that the defendant had a valid California license and a revoked Illinois license. Taylor then placed the defendant under arrest for driving with a revoked license.

The defendant testified that at about 11:05 p.m. on the night in question he was sitting and talking with his girlfriend, Denise, in Tiskilwa Park. He stated that Taylor rode by on his bicycle and told them that the park closed at 11 p.m. and that they should leave. Denise told Taylor not to bother them. She and the defendant then got into a car and drove two blocks out of the park. They parked on the side of the road, where they continued talking. About 15 minutes later, a squad car pulled up behind them. According to the defendant, Denise got out of the car and talked to the officer. Shortly thereafter, the defendant got out of the car and asked the officer if there was a problem. The officer asked the defendant for his driver's license. The defendant testified that he told the officer that he was a resident of California and handed him a valid California driver's license. After running a computer check, the officer arrested the defendant for driving with a revoked license.

The trial judge found that the officer had had no reason to ask the defendant for his driver's license. On appeal, the State contends that the trial court erred in granting the defendant's motion. Specifically, the State argues that the encounter between the defendant and the police officer was not a "seizure" within the meaning of the fourth amendment. In the alternative, the State contends that, if there was a seizure, it was justified pursuant to a valid *Terry* stop that subsequently developed into an arrest supported by probable cause.

■■■■ Initially, we note that not all personal intercourse between policemen and citizens involves a seizure so as to implicate the fourth amendment. (*People v. Fenton* (1988), 125 Ill. 2d 343, 532 N.E.2d 228.) Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a seizure has occurred. (*Michigan v. Chesternut* (1988), 486 U.S. 567, 100 L. Ed. 2d 565, 108 S. Ct. 1975.) Police do not seize a person by merely approaching him in a public place and asking him questions. (*Florida v. Royer* (1983), 460 U.S. 491, 75 L. Ed. 2d 229, 103 S. Ct. 1319; *People v. Alcantara* (1989), 179 Ill. App. 3d 105, 534 N.E.2d 405.) The test employed to determine if an individual has been seized is whether, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.

(*Michigan v. Chesternut* (1988), 486 U.S. 567, 100 L. Ed. 2d 565, 108 S. Ct. 1975.) A police officer seeking to justify an intrusion of a person's freedom to walk away "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." (*Terry v. Ohio* (1968), 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880.) This principle has been codified in Illinois. Section 107—14 of the Code of Criminal Procedure of 1963 provides that a peace officer may stop a person in a public place when the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed an offense. (Ill. Rev. Stat. 1987, ch. 38, par. 107—14.) A reviewing court will not disturb a trial court's finding in a hearing on a motion to suppress unless the trial court's finding was manifestly erroneous. *People v. Long* (1983), 99 Ill. 2d 219, 457 N.E.2d 1252.

■ Turning to the instant case, we must first determine at what point in time the defendant was "seized" within the meaning of the fourth amendment and, more specifically, *Terry v. Ohio*. We note that in the case at bar Officer Taylor merely pulled up behind the defendant, without activating his lights or siren. The defendant then approached the officer and a conversation ensued. The officer requested the defendant's driver's license and the defendant handed him an apparently valid California driver's license. At that point, a seizure had not yet occurred. However, the officer proceeded a step further and ordered the defendant to have a seat in the defendant's car while the officer ran a computer check on the defendant's license. By then, the defendant could reasonably believe that he was no longer free to walk away. We therefore find that a seizure occurred when the officer required the defendant to return to his car while he ran a computer check.

We next turn to the question of whether the instant seizure was justified. The State contends that any seizure which occurred in the encounter between the defendant and Officer Taylor was justified because the officer had a reasonable, articulable suspicion that a crime had just been, was being, or was about to be committed. The State points to the fact that Taylor observed the defendant in the park after closing hours, which was a violation of a village ordinance. The State also points out that a female yelled at Officer Taylor. It contends that these were significant indicators that criminal activity was afoot.

■ We find that Officer Taylor did not possess an articulable suspicion that a crime had been or was about to be committed. Officer Taylor did not testify that he made the stop to issue a citation for an ordinance violation, and the record does not reveal that such a citation

was issued. Further, Taylor testified that Denise explained to him that the defendant was a friend of hers from California and that they were just talking. The defendant then handed the officer an apparently valid California driver's license. At that point, the officer's questions had been answered. We find no reason for him to have harbored suspicion that criminal activity was afoot. More important, he offered no testimony that he had such a suspicion. We therefore conclude that the trial judge's granting of the defendant's motion was not manifestly erroneous.

■ The State also argues that the trial judge's ruling was erroneous because he believed that the encounter on the side of the road had to be supported by probable cause instead of a lesser standard. We find the State's argument unpersuasive since the question before this court is the correctness of the result reached by the trial judge, not the correctness of his reasoning in reaching that result. *People v. Thompkins* (1988), 121 Ill. 2d 401, 521 N.E.2d 38.

Accordingly, the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

WOMBACHER, P.J., and HEIPLE, J., concur.