THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SERVELION LLANOS, Defendant-Appellant.

First District (1st Division)   No. 1—94—1708

Opinion filed May 19, 1997.

Mitchell D. Kreiter and Thomas A. Gibbons, both of Kreiter & Gibbons, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Robert Robertson, and Tracey Annen, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

Defendant, Servelion Llanos, appeals from a guilty verdict entered after a bench trial on drug possession and distribution charges. We affirm.

On September 13, 1993, Chicago police officer Salvatore Inglima sought a search warrant for an alleged drug dealer named "Jose" and the premises at 3417 West Evergreen, Chicago. The complaint for search warrant was based upon a tip from a reliable confidential informant that the informant had purchased cocaine from Jose at that address. The complaint further stated that, following the exchange, Jose "placed the remaining bags of cocaine *** into a box." A warrant was issued authorizing a search of the

"person of 'Jose', a male, white Hispanic, dark, wavy hair, dark eyes, olive comlexion [sic], approximately 6'0", 160-170 lbs., thin build and the 2nd floor rear apartment at 3417 West Evergreen Street, Chicago, Cook County, Illinois."

The warrant further authorized seizure of the following instruments, articles and things:

"Cocaine, Cocaine paraphernialia [sic], co-mingled United States Currency, proof of residency and any other items in direct violation of *Illinois Controlled Substances Act* or any items which have been used in the comission [sic] of, or which constitute evidence of the offense of ILLINOIS COMPILED STATUTES, Chapter 720 § 570/402, ***Possession of a Controlled Substance***." (Emphasis in original.)

On September 14, 1993, Officer Inglima and other members of the Chicago Police Department Organized Crime Division Task Force staked out the two-story apartment building located at 3417 West Evergreen in preparation to execute the search warrant. While on the stakeout the officers observed the defendant carry a gray metal box into the building. Some 15 minutes later, the officers entered the apartment building and proceeded to the second floor. There they encountered Jose Gonzalez exiting the rear apartment. The officers placed him in custody and began to search the apartment.

The defendant was found seated at the kitchen table with the closed tool box on the table in front of him. Officer Inglima performed a protective pat down search of defendant, then opened the tool box and recovered from it a brick-shaped package containing approximately one kilogram of cocaine. Officer Inglima then informed defendant that he was under arrest and advised him of his *Miranda* rights. Officer Armando Ramirez translated the warning into Spanish. As the search proceeded, Officer Ramirez spoke to defendant in Spanish and obtained written consent to search the defendant's apart-

ment located at 4647 North Keystone Avenue in Chicago. There, the officers discovered two additional brick-shaped packages containing a total of approximately two kilograms of cocaine.

The defendant was charged with possession with intent to deliver all three kilograms of cocaine. Defendant's subsequent motion to quash his arrest and suppress the evidence obtained in the two searches was denied. Following an evidentiary hearing the trial court concluded that Officer Inglima, in opening the tool box, was conducting a protective search of the box and had a right to do so for his own protection and that he had the right to search the defendant pursuant to section 108—9 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108—9 (West 1991)), which allows police to detain and search persons on the premises at the time the search warrant is executed. The court further found that the defendant's consent to the search of his apartment was voluntarily given.

After a bench trial, the defendant was found guilty of possession with intent to deliver approximately three kilograms of cocaine and sentenced to 17 years in the Illinois Department of Corrections. This appeal followed.

On appeal, we are asked to determine whether the trial court erred when it denied defendant's motion to suppress (1) evidence seized from a tool box owned by defendant during a warrant search of the person and premises of another and (2) evidence seized from defendant's own apartment pursuant to a consent search.

I

■ A trial court's determination on a motion to suppress will not be overturned unless it is manifestly erroneous. *People v. Redmiles*, 191 Ill. App. 3d 198, 202, 547 N.E.2d 724 (1989). A reviewing court may look to both trial testimony and testimony presented at the suppression hearing in reviewing the denial of a motion to suppress. *People v. Turner*, 259 Ill. App. 3d 979, 989, 631 N.E.2d 1236 (1994).

■ On appeal, the State argues, *inter alia*, that the toolbox was implicitly covered by the warrant because, once brought into the area covered by the warrant, the toolbox assumed the character of any other container in the apartment that could conceal narcotics. In support of its argument, the State cites *United States v. Ross*, 456 U.S. 798, 72 L. Ed. 2d 572, 102 S. Ct. 2157 (1982), which stated:

"A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found and is not limited by the possibility that separate acts of entry or opening may be required to complete the search." *Ross*, 456 U.S. at 820-21, 72 L. Ed. 2d at 591, 102 S. Ct. at 2170-71.

Defendant counters that his mere presence in Jose's apartment

when police executed the warrant did not justify a search of the tool-box. In support of his argument, the defendant principally relies upon *People v. Gross*, 124 Ill. App. 3d 1036, 465 N.E.2d 119 (1984). Defendant's reliance is misplaced.

The *Gross* court suppressed contraband obtained from the purse of a social guest present in an apartment during a warrant search in part on grounds the police knew the purse was not part of the premises described in the search warrant. 124 Ill. App. 3d at 1040-41, 465 N.E.2d at 122. While one might agree, for the sake of argument, "that a woman's purse occupies a peculiar status" as "an extension of the person" whose form is "only a matter of expediency, custom and style development over the centuries" and in which a woman expects "supreme privacy" (*United States v. Teller*, 397 F.2d 494, 496 (N.D. Ill. 1968), *cert. denied*, 393 U.S. 937, 21 L. Ed. 2d 273, 89 S. Ct. 299 (1968)), we decline to attach the same status to a toolbox. A person does not "wear" a toolbox in the same manner that a woman would "wear" a handbag—a toolbox is not typically a repository for intimate personal effects nor is it selected to harmonize with the carrier's attire and personal appearance. *Teller*, 397 F.2d at 497. And, unlike a purse, it would not have been unreasonable for Officer Inglima to believe that Jose Gonzalez shared use of the toolbox with defendant—a toolbox is frequently an object over which two or more persons share authority. *People v. James*, 163 Ill. 2d 302, 645 N.E.2d 195 (1994). Indeed, the defendant himself testified at the hearing on the motion to suppress that the toolbox merely contained tools and that he had gone to Jose's apartment "because he had been helping to fix my car the day before." Defendant's own testimony suggests that Jose Gonzalez and defendant shared use of the toolbox.

We conclude, therefore, that the mere fact that Officer Inglima observed defendant enter the subject premises with the toolbox and had it in his possession at the time the search was executed did not preclude a search thereof under *Gross*. Rather, we agree with the State's assertion that, under the circumstances presented, the toolbox was implicitly covered by the warrant because, once brought into the area covered by the warrant, the toolbox assumed the character of any other container in the apartment that could conceal narcotics. We find this to be particularly true where, as here, the officer had been informed, and had in turn informed the court issuing the search warrant, that the contraband being sought was stored in a "box." Accordingly, Officer Inglima's search of the toolbox was permissible under *Ross*.

Having found that Officer Inglima's search of the toolbox was implicitly authorized by the search warrant, we decline to address

the State's additional arguments on appeal that the search was permissible (i) because there was individualized suspicion regarding the contents of the metal toolbox—it being the type of container that could reasonably be expected to contain illegal drugs in an apartment known for drug trafficking, (ii) as a frisk for weapons pursuant to *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), or (iii) as part of a protective sweep authorized by section 108—9 of the Code of Criminal Procedure of 1963 (725 ILCS 5/108—9 (West 1992)).

## II

■ We are next asked to determine whether the defendant's subsequent consent to search his home was voluntary. In Illinois, the trial court's finding of voluntariness is not reversible error unless it is clearly unreasonable. *People v. Casazza*, 144 Ill. 2d 414, 417, 581 N.E.2d 651, 653 (1991); *People v. Odom*, 83 Ill. App. 3d 1022, 1027, 404 N.E.2d 997, 1002 (1980). Voluntariness of the consent depends on the totality of circumstances under which the consent was given, and it is the State's burden to show, by a preponderance of the evidence, that the consent was voluntarily given. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248-49, 36 L. Ed. 2d 854, 875, 93 S. Ct. 2041, 2059 (1973); *People v. DeMorrow*, 59 Ill. 2d 352, 320 N.E.2d 1 (1974).

■ According to Officer Ramirez, Llanos was found seated at the kitchen table with the toolbox in front of him. Upon the officers' discovery that the toolbox contained cocaine, Llanos was immediately arrested, "Mirandized," and placed in handcuffs. Officer Ramirez also testified that, following Llanos' arrest, he explained the written consent form to Llanos in Spanish, told him he did not have to sign it, and gave Llanos the opportunity to read the document. Ramirez's testimony was corroborated by Officer Inglima.

Defendant's version of events was somewhat different. Defendant testified that he was not sitting at the kitchen table when police arrived but, rather, was descending the stairs outside the apartment and that the officers took him into Jose's apartment at gunpoint. The defendant also testified that although an officer spoke to him in Spanish, he was never told that he was under arrest or informed that he had a right not to consent to the search of his apartment. The defendant further claimed that he was told to sign a blank sheet of paper, that when he was told to sign the paper the police had Jose Gonzalez on the floor and were stomping on his head, that he himself was surrounded by three officers, and that he believed he would be beaten if he did not sign. Upon cross-examination by the State, however, the defendant admitted that the form was not blank when he signed it. Instead, defendant claimed that he was not given an opportunity to read the form but simply told to "sign there."

The determination of the credibility of the witnesses is strictly within the purview of the trier of fact. *People v. Agee*, 100 Ill. App. 3d 878, 883-84, 427 N.E.2d 244, 248 (1981), citing *People v. Manion*, 67 Ill. 2d 564, 578, 367 N.E.2d 1313, 1320 (1977). Thus the trial court, sitting as trier of fact in a suppression hearing, is not required to accept the defendant's testimony as the unadulterated truth. As between the testimony of Officer Ramirez and the defendant, the trial court apparently found Ramirez to be more credible than defendant. Based upon Ramirez's version of events, the trial court reasonably concluded that the defendant had voluntarily consented to a search of his apartment. Accordingly, we affirm the trial court's denial of defendant's motion to suppress the two kilograms of cocaine seized from defendant's apartment.

Because the three kilograms of cocaine were properly admitted into evidence, we affirm the defendant's conviction. As part of our judgment, we award the State $100 for defending this appeal (*People v. Nicholls*, 71 Ill. 2d 166, 374 N.E.2d 194 (1978)) and an additional $50 for oral argument (*People v. Agnew*, 105 Ill. 2d 275, 473 N.E.2d 1319 (1985)).

Finally, because we have concluded herein that police properly searched the toolbox, defendant's arrest was not illegal. Thus, we need not determine whether Llanos' consent to search was obtained without exploitation of an illegal arrest. *People v. Odom*, 83 Ill. App. 3d 1022, 1027, 404 N.E.2d 997, 1002 (1980).

Affirmed.

HOFFMAN and THEIS, JJ., concur.