THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. CHRISTOPHER S. BRADLEY, Defendant-Appellee.

Fourth District    No. 4—96—0835

Opinion filed September 25, 1997.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Jeffrey D. Foust, both of State Appellate Defender's Office, of Springfield, for appellee.

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In May 1996, the State charged defendant, Christopher S. Bradley, with obstructing justice by providing false information to a

police officer (720 ILCS 5/31—4 (West 1994)). In August 1996, defendant filed a motion to suppress the evidence that was the basis for the charge against him. In September 1996, the trial court conducted a hearing on that motion and granted it. The State appeals, and we reverse and remand with directions.

## I. BACKGROUND

At the September 1996 hearing on defendant's motion to suppress, the only witness to testify was Urbana police officer Liam Dempsey. He testified about events of March 23, 1996, and April 7, 1996, which led to defendant's arrest. On March 23, 1996, at about 12:40 a.m., Dempsey and Urbana police sergeant Pat Connolly were on routine patrol when Dempsey saw a station wagon with no license plates and a license-applied-for (LAF) sticker with an unreadable expiration date. Dempsey stated that the type of LAF sticker located on the station wagon contains small lettering which "sometimes cannot be read until a person gets right up to it."

Dempsey stopped the vehicle, approached the car from the rear, and determined that the LAF sticker located on the rear windshield was valid. Dempsey then approached defendant, who remained seated in the car, and asked for his driver's license. Defendant said he had a valid driver's license but did not have it with him. At that point, Dempsey asked defendant for his name so that Dempsey could run a computer check to determine if defendant had a valid driver's license. Defendant told Dempsey that his name was Brian Cutter. The computer check indicated that there was "no record on file" for Brian Cutter, which means that a person by that name has never had a driver's license in Illinois. Dempsey confronted defendant with this information, and defendant then stated that he did not have a valid driver's license. Defendant also stated that he was driving only because his passenger was intoxicated and could not drive safely. At that point, Dempsey issued defendant a citation for driving without a valid driver's license.

Dempsey also testified that he asked defendant for his driver's license after confirming that the LAF sticker was valid because (1) departmental policy required him to do so; and (2) he wanted to make sure that defendant had a legal right to drive a vehicle.

On April 7, 1996, while Dempsey was stopped at an intersection, he saw defendant driving the same car he had been driving on March 23, 1996. Dempsey mentioned to other police officers present that a person without a valid driver's license had just driven past them. At that point, defendant pulled over and walked over to Dempsey. Another officer then arrested defendant for driving without a valid

driver's license. After officers took defendant into custody, he told Dempsey that his real name was Christopher Bradley.

After hearing counsel's arguments and considering the evidence, the trial court granted defendant's motion. The court found that once Dempsey determined that the LAF sticker was valid, the "purpose for the stop of the vehicle ha[d] been taken care of," and Dempsey could do nothing more than explain to defendant the reason he had been stopped.

## II. ANALYSIS

The State argues on appeal that the trial court erred by granting defendant's motion to suppress on the ground that the police officer unjustifiably seized defendant when he asked for his driver's license. We note that the court's ruling is generally entitled to great deference, and this court will not disturb it on review unless we conclude it is against the manifest weight of the evidence. *People v. Garriott*, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 782 (1993). However, where the facts are uncontroverted, as here—and we add that we accept the trial court's factual findings—we may review the trial court's determination *de novo* as to what conclusions of law apply to the facts as found. *In re D.G.*, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991).

■ Initially, we note that defendant concedes that Dempsey's initial stop on March 23, 1996, was valid. See *People v. Adams*, 225 Ill. App. 3d 815, 818, 587 N.E.2d 592, 595 (1992) ("The absence of a license plate provides the basis for the [investigatory] stop"); *People v. Tylkowski*, 171 Ill. App. 3d 93, 99, 524 N.E.2d 1112, 1116 (1988) (where the court held that the only way police officers could determine whether the defendant had a valid LAF sticker was to stop him and check).

The State contends that after Dempsey had properly stopped defendant to check the validity of the car's LAF sticker, he could then approach defendant to request defendant's driver's license. We agree.

In *People v. McVey*, 185 Ill. App. 3d 536, 539, 541 N.E.2d 835, 837 (1989), a police officer pulled up behind a parked car. The officer asked for the defendant's driver's license, and the defendant handed him a facially valid California driver's license. The officer then ordered the defendant to remain in his car while the officer ran a computer check on the defendant's license. The *McVey* court held that no seizure occurred when the officer asked to see the defendant's driver's license. *McVey*, 185 Ill. App. 3d at 539, 541 N.E.2d at 837. The court also held that an unjustifiable seizure occurred only when the officer continued his investigation even though the defendant had

produced a facially valid driver's license. *McVey*, 185 Ill. App. 3d at 539, 541 N.E.2d at 837. The court reasoned that "[a]t that point, the officer's questions had been answered." *McVey*, 185 Ill. App. 3d at 540, 541 N.E.2d at 837.

In *People v. Arteaga*, 274 Ill. App. 3d 781, 782, 655 N.E.2d 290, 290 (1995), a police officer stopped a vehicle with no visible registration. The officer approached the vehicle and observed a valid registration sticker on the car's rear window. The officer asked for the defendant's driver's license, and the defendant produced a facially valid Illinois driver's license. The officer then ran a computer check and discovered that the defendant's license had been revoked. The *Arteaga* court, relying in part on *McVey*, concluded that when the officer ran a computer check on the defendant's license, he exceeded the underlying justification for the initial stop. *Arteaga*, 274 Ill. App. 3d at 783, 655 N.E.2d at 291-92. In so concluding, the court wrote that once the officer "saw the valid registration in the rear window and the defendant tendered a facially valid driver's license, [the officer] had no reason to detain the defendant any longer." *Arteaga*, 274 Ill. App. 3d at 783, 655 N.E.2d at 291.

In *People v. McKnight*, 198 Ill. App. 3d 530, 531-32, 555 N.E.2d 1196, 1197 (1990), a police officer pulled up behind a parked truck because it looked suspicious and she wanted to determine whether the driver was injured. Upon approaching the truck, the officer asked the defendant if he had a driver's license, and he responded that he did not have one. The officer then ran a computer check, determined that the defendant's driver's license was revoked, and arrested defendant after he admitted he had been driving the truck. The *McKnight* court concluded that the police officer in that case did not need probable cause to request the defendant's driver's license and her request did not constitute an illegal seizure. *McKnight*, 198 Ill. App. 3d at 533, 555 N.E.2d at 1198.

■ Consistent with *McVey*, *Arteaga*, and *McKnight*, we conclude that once Dempsey properly stopped the car defendant was driving to determine whether the LAF sticker was valid and found that the sticker was valid, he could then approach defendant, explain to him why he had been stopped, and ask defendant to produce his driver's license. Under these circumstances, no seizure occurred when Dempsey did so. Accordingly, we hold that the trial court erred by granting defendant's motion to suppress.

We further hold that when, as here, a police officer has lawfully stopped a motorist, the officer may ask to see the motorist's driver's license, proof of insurance, and vehicle registration, and the officer's doing so does not raise any constitutional issues. We note that our

decision is consistent with this court's holding in *Adams*, where a police officer approached the defendant's car after having stopped it to check its LAF sticker. Upon approaching the defendant, the officer noticed an alcohol odor on defendant's breath and slurred speech, and subsequently ticketed him for driving while under the influence of alcohol. *Adams*, 225 Ill. App. 3d at 816-17, 587 N.E.2d at 594. This court addressed the defendant's argument that once the officer properly stopped him, it was improper for the officer to further "detain" him to explain the reason for the stop, and we wrote the following:

> "[O]nce it was determined that defendant had a valid [LAF] form displayed, [it just naturally followed that] the officer would approach the defendant, explain the reason for the stop, apologize, and advise defendant he was free to leave. In doing so, any observations the officer made may form the basis of probable cause to arrest the defendant ***." *Adams*, 225 Ill. App. 3d at 819, 587 N.E.2d at 595.

We also note that because the issue is not before us under the circumstances of this case, we do not express any opinion about the conclusions in *McVey* and *Arteaga* that running a computer check on a facially valid driver's license constitutes an unjustifiable seizure.

## III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment granting defendant's motion to suppress, and we remand for further proceedings consistent with the views expressed herein.

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.