NO. 4-96-0835 

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, ) Appeal from

Plaintiff-Appellant, ) Circuit Court of

v. ) Champaign County

CHRISTOPHER S. BRADLEY, ) No. 96CF529 

Defendant-Appellee. )

) Honorable

) Donald R. Parkinson,

) Judge Presiding.

_________________________________________________________________

  

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

In May 1996, the State charged defendant, Christopher S. Bradley, with obstructing justice by providing false in­formation to a police officer (720 ILCS 5/31-4 (West 1994)).  In August 1996, defen­dant filed a motion to suppress the evi­dence that was the basis for the charge against him.  In September 1996, the trial court conducted a hearing on that motion and granted it.  The State appeals, and we reverse and remand with direc­tions.

I. BACKGROUND

At the September 1996 hearing on defendant's motion to suppress, the only witness to testify was Urbana police offi­cer Liam Dempsey.  He testified about events of March 23, 1996, and April 7, 1996, which led to defendant's arrest.  On March 23, 1996, at about 12:40 a.m., Dempsey and Urbana police ser­geant Pat Connolly were on routine patrol when Dempsey saw a station wagon with no license plates and a license-applied-for (LAF) sticker with an unreadable expiration date.  Dempsey stated that the type of LAF sticker located on the station wagon contains small letter­ing which "some­times cannot be read until a person gets right up to it."  

Dempsey stopped the vehi­cle, approached the car from the rear, and deter­mined that the LAF sticker located on the rear windshield was valid.  Dempsey then approached defen­dant, who re­mained seated in the car, and asked for his driver's license.  Defen­dant said he had a valid driver's license but did not have it with him.  At that point, Dempsey asked defendant for his name so that Dempsey could run a computer check to determine if defendant had a valid driver's license.  Defendant told Dempsey that his name was Brian Cutter.  The computer check indicated that there was "no record on file" for Brian Cutter, which means that a person by that name has never had a driver's license in Illi­nois.  Dempsey confronted defendant with this information, and defendant then stated that he did not have a valid driver's li­cense.  Defendant also stated that he was driving only because his passenger was intoxicated and could not drive safely.  At that point, Dempsey issued defen­dant a cita­tion for driving without a valid driver's license.

Dempsey also testified that he asked defendant for his driver's license after confirming that the LAF sticker was valid because (1) departmental policy required him to do so; and (2) he wanted to make sure that defendant had a legal right to drive a vehicle.

On April 7, 1996, while Dempsey was stopped at an inter­section, he saw defen­dant driving the same car he had been driving on March 23, 1996.  Dempsey men­tioned to other police officers present that a person without a valid driver's license had just driven past them.  At that point, defendant pulled over and walked over to Dempsey.  Another officer then arrested defendant for driving without a valid driver's license.  After officers took defendant into custody, he told Dempsey that his real name was Christopher Bradley.

After hearing counsels' arguments and considering the evidence, the trial court granted defendant's motion.  The court found that once Dempsey determined that the LAF sticker was valid, the "purpose for the stop of the vehicle ha[d] been taken care of," and Dempsey could do nothing more than explain to defendant the reason he had been stopped.                  

II. ANALYSIS

The State argues on appeal that the trial court erred by granting defendant's motion to suppress on the ground that the police officer unjustifiably seized defendant when he asked for his driver's license.  We note that the court's ruling is gener­al­ly enti­tled to great deference, and this court will not disturb it on review unless we conclude it is against the mani­fest weight of the evidence.  
People v. Garriott
, 253 Ill. App. 3d 1048, 1050, 625 N.E.2d 780, 782 (1993).  Howev­er, where the facts are uncon­tro­verted, as here--and we add that we accept the trial court's factual find­ings--we may review the trial court's deter­mi­nation 
de
 
novo
 as to what conclu­sions of law apply to the facts as found.  
In re D.G.
, 144 Ill. 2d 404, 408-09, 581 N.E.2d 648, 649 (1991). 

Initially, we note that defendant concedes that Dempsey's initial stop on March 23, 1996, was valid.  See 
People v. Adams
, 225 Ill. App. 3d 815, 818, 587 N.E.2d 592, 595 (1992) ("The absence of a license plate provides the basis for the [investiga­tory] stop"); 
People v. Tylkowski
, 171 Ill. App. 3d 93, 99, 524 N.E.2d 1112, 1116 (1988) (where the court held that the only way police officers could determine whether the defen­dant had a valid LAF sticker was to stop him and check).

The State contends that after Dempsey had properly stopped defendant to check the validity of the car's LAF sticker, he could then ap­proach defendant to request defendant's driver's license.  We agree.

In 
People v. McVey
, 185 Ill. App. 3d 536, 539, 541 N.E.2d 835, 837 (1989), a police officer pulled up behind a parked car.  The officer asked for the defendant's driver's license, and the defendant handed him a facially valid California driver's li­cense.  The officer then ordered the defendant to remain in his car while the officer ran a computer check on the defendant's license.  The 
McVey
 court held that no seizure occurred when the officer asked to see the defendant's driver's license.  
McVey
, 185 Ill. App. 3d at 539, 541 N.E.2d at 837.  The court also held that an unjustifiable seizure occurred only when the officer continued his investiga­tion even though the defendant had pro­duced a facial­ly valid driver's license.  
McVey
, 185 Ill. App. 3d at 539, 541 N.E.2d at 837.  The court reasoned that "[a]t that point, the officer's ques­tions had been an­swered."  
McVey
, 185 Ill. App. 3d at 540, 541 N.E.2d at 837. 

In 
People v. Arteaga
, 274 Ill. App. 3d 781, 782, 655 N.E.2d 290, 290 (1995), a police officer stopped a vehicle with no visible registration.  The officer approached the vehicle and observed a valid registration sticker on the car's rear window.  The officer asked for the defendant's driver's license, and the defendant produced a facially valid Illinois driver's li­cense.  The officer then ran a computer check and discovered that the defendant's license had been revoked.  The 
Arteaga
 court, relying in part on 
McVey
, concluded that when the officer ran a computer check on the defendant's license, he exceeded the underlying justification for the initial stop.  
Arteaga
, 274 Ill. App. 3d at 783, 655 N.E.2d at 291-92.  In so conclud­ing, the court wrote that once the officer "saw the valid regis­tra­tion in the rear window and the defendant tendered a facially valid driver's li­cense, [the officer] had no reason to detain the defen­dant any longer."  
Arteaga
, 274 Ill. App. 3d at 783, 655 N.E.2d at 291.
   

In 
People v. McKnight
, 198 Ill. App. 3d 530, 531-32, 555 N.E.2d 1196, 1197 (1990), a police officer pulled up behind a parked truck because it looked suspicious and she wanted to determine whether the driver was injured.  Upon ap­proach­ing the truck, the officer asked the defen­dant if he had a driver's license, and he respond­ed that he did not have one.  The officer then ran a computer check, deter­mined that the defendant's driver's license was revoked, and arrested defendant after he admitted he had been driving the truck.  The 
McKnight
 court concluded that the police officer in that case did not need proba­ble cause to request the defendant's driver's license and her request did not consti­tute an illegal seizure.  
McKnight
, 198 Ill. App. 3d at 533, 555 N.E.2d at 1198.    

Consistent with 
McVey
, 
Arteaga
, and 
McKnight
, we conclude that once Dempsey properly stopped the car defendant was driving to determine whether the LAF sticker was valid and found that the sticker was valid, he could then ap­proach defen­dant, explain to him why he had been stopped, and ask defendant to produce his driver's li­cense.  Under these circumstances, no seizure occurred when Dempsey did so.  Accordingly, we hold that the trial court erred by grant­ing defendant's motion to suppress.   We further hold that when, as here, a police officer has lawfully stopped a motorist, the officer may ask to see the motorist's driver's license, proof of insurance, and vehicle registration, and the officer's doing so does not raise any constitutional issues.  We note that our decision is consistent with this court's holding in 
Adams
, where a police officer ap­proached the defendant's car after having stopped it to check its LAF sticker.  Upon approach­ing the defendant, the officer noticed an alcohol odor on defendant's breath and slurred speech, and subse­quent­ly ticketed him for driving while under the influence of alcohol.  
Adams
, 225 Ill. App. 3d at 816-17, 587 N.E.2d at 594.  This court ad­dressed the defendant's argu­ment that once the officer properly stopped him, it was improp­er for the officer to further "detain" him to explain the reason for the stop, and we wrote the follow­ing:

"[O]nce it was determined that defendant had a valid [LAF] form displayed, [it just natu­rally followed that] the offi­cer would ap­proach the de­fen­dant, explain the reason for the stop, apolo­gize, and ad­vise defen­dant he was free to leave.  In doing so, any ob­serva­tions the officer made may form the basis of proba­ble cause to ar­rest the defen­dant ***."  
Adams
, 225 Ill. App. 3d at 819, 587 N.E.2d at 595.

We also note that because the issue is not before us under the circum­stances of this case, we do not express any opinion about the conclusions in 
McVey
 and 
Arteaga
 that running a computer check on a facially valid driver's license constitutes an unjustifiable seizure.

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment granting defendant's motion to suppress, and we remand for further proceedings consistent with the views ex­pressed herein.  

Reversed and remanded with directions.

McCULLOUGH and COOK, JJ., concur.