THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBIN SMITH, Defendant-Appellant.

Fourth District    No. 4—98—0959

Argued July 21, 1999.—Opinion filed August 16, 2000.

STEIGMANN, J., dissenting.

Daniel D. Yuhas and Catherine K. Hart (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

John C. Piland, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Timothy J. Londrigan (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendant, Robin Smith, was convicted, at a stipulated bench trial, of the offense of possession of drug paraphernalia (720 ILCS 600/3.5(a) (West 1998)). Defendant was later sentenced to 12 months' conditional discharge. Defendant appeals the court's denial of her motion to suppress. We reverse.

The evidence at the September 1998 hearing on defendant's motion to suppress showed the following.

Champaign police officer Christopher Ballard testified that about 2:30 a.m. on July 8, 1998, he was on routine patrol when he saw a blue car with a broken headlight. After Ballard began following the car, he observed that one of its brake lights was cracked. Ballard stopped the car because of those violations, approached the car, and noticed that the driver appeared "very nervous." Ballard asked the driver for her driver's license. Defendant, who had been driving the vehicle, responded that she did not have her license with her, but she gave Ballard her name and date of birth and removed a personalized check from her purse to show him. As defendant was removing the check, Ballard saw her shove a "clear plastic baggie that had a knot in it" toward the bottom of the purse. Ballard testified defendant pushed the bag toward the bottom of her purse in "a very rapid, furtive manner."

Ballard then went to his squad car and ran a computer and warrant check on defendant and her passenger, which came back negative as to both. When he returned to defendant's car, Ballard noticed that defendant had "become even more nervous" and had "visible perspiration on her forehead and facial area." Ballard asked defendant if she

had any weapons, drugs, or anything else in the car or her purse that Ballard needed to be concerned about. Defendant hesitated and said "no." Ballard asked her if he could search the car, but she did not respond. He then asked if he could look through her purse. Defendant lowered her head and bit her lip. Ballard asked again, and defendant "began going through two of the three pockets in the purse, showing [Ballard] all of the items in the purse." After Ballard pointed out that defendant had not shown him anything in the pocket from which she had removed her personal check, defendant opened that pocket. As she did so, Ballard again saw the same plastic bag with a knot in it that he thought contained a white lumpy substance. Defendant again made a quick furtive movement to push the bag to the bottom of her purse. Defendant testified that Ballard asked her about the bag and she told him that it contained "nothing but pills." Ballard testified he suspected the bag contained crack cocaine.

Ballard took defendant's purse to his squad car and began searching it. He removed the plastic bag with the knot in it, which "appeared to contain approximately 10 pill[-]like items with a large E stamped on them." Ballard set that aside and continued going through the purse. In the same pocket where he found the plastic bag he noticed "what appeared to be a makeup kit or maybe a cigarette kit." Ballard opened up the kit and "located several items [he] suspected to be drug paraphernalia." Those items included a four-inch-long cylindrical tube with burn marks on both ends and a "piece of brillo stuck in one end," two flat metal pieces ("pushrods"), and six disposable butane lighters. Ballard then arrested defendant for possession of drug paraphernalia. He did not issue any traffic citations.

The trial court found that Ballard's initial stop of the car was valid and that when Ballard saw the knotted plastic bag pushed toward the bottom of the purse a second time he had probable cause to believe:

> "the purse contained evidence of an offense and that the defendant was in the process of or was committing the offense of unlawful possession of a controlled substance. Back at his car, he further searches the purse. He notices that the knotted plastic baggie contains not what he thought to be crack cocaine, when he saw it the second time, but, actually, some small pills with a letter E on them. At that point, I think the officer is still justified in believing that he probably has some form of controlled substance violation. Someone has a prescription or some other reason to have what might be considered controlled substances legitimately, they might have them in a prescription bottle, and not in a clear plastic baggie."

■ The trial court's ruling on a motion to suppress is generally entitled to great deference, and this court will not disturb it on review unless we conclude it is against the manifest weight of the evidence. However, where the facts are uncontroverted, as here, we may review the trial court's determination *de novo* as to what conclusions of law apply to the facts as found. *People v. Bradley*, 292 Ill. App. 3d 208, 210, 685 N.E.2d 426, 427 (1997).

■ "[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *New York v. Belton*, 453 U.S. 454, 460, 69 L. Ed. 2d 768, 775, 101 S. Ct. 2860, 2864 (1981) (stop for minor traffic offense, custodial arrest because of marijuana in plain view, followed by search of vehicle); see also *People v. Bailey*, 159 Ill. 2d 498, 503-04, 639 N.E.2d 1278, 1280-81 (1994) (stop for minor traffic offense, custodial arrest because driver's license suspended, followed by search of vehicle). That right to search extends to containers and does not depend on the probability that weapons would be found or evidence would be destroyed. " 'A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the [f]ourth [a]mendment: that intrusion being lawful, a search incident to the arrest requires no additional justification.' " *Belton*, 453 U.S. at 461, 69 L. Ed. 2d at 775-76, 101 S. Ct. at 2864, quoting *United States v. Robinson*, 414 U.S. 218, 235, 38 L. Ed. 2d 427, 440-41, 94 S. Ct. 467, 477 (1973).

Where there was no arrest, only probable cause to believe contraband was present, there formerly was "a curious line between the search of an automobile that coincidentally turns up a container [(no warrant required to search container)] and the search of a container that coincidentally turns up in an automobile [(warrant required to search container)]." *California v. Acevedo*, 500 U.S. 565, 580, 114 L. Ed. 2d 619, 634, 111 S. Ct. 1982, 1991 (1991) (officers saw package reasonably believed to contain marijuana placed in trunk of car). *Acevedo* did away with that distinction, allowing a search of the container in either case. *Acevedo*, 500 U.S. at 580, 114 L. Ed. 2d at 634, 111 S. Ct. at 1991.

■ A stop for a minor traffic violation is something very different from a lawful custodial arrest. The usual traffic stop is considered a *Terry* stop (*Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) rather than a formal arrest. See *People v. Gonzalez*, 184 Ill. 2d 402, 413-14, 704 N.E.2d 375, 380 (1998); see also *People v. Stewart*, 242 Ill. App. 3d 599, 604-05, 610 N.E.2d 197, 202 (1993). When a vehicle is stopped for a minor traffic violation, a general search of the vehicle is not justified. *People v. Koutsakis*, 272 Ill. App. 3d 159, 163, 649

N.E.2d 605, 608 (1995). When an officer has properly stopped a vehicle for a minor traffic violation and reasonably believes, based on specific and articulable facts, that his safety or the safety of others is in danger, then he may conduct a limited search of an individual for weapons. The sole purpose of the search is to protect the officer, not to gather evidence. *People v. Sweborg*, 293 Ill. App. 3d 298, 304, 688 N.E.2d 144, 148 (1997). After a *Terry* stop, the officer may discover items either as a result of a frisk or by seeing them in plain view or during the course of a search by consent. If those items would justify a reasonable person to believe that the car contained contraband, there would then be probable cause to search the rest of the car. *People v. Tripp*, 306 Ill. App. 3d 941, 952, 715 N.E.2d 689, 697 (1999) (handgun in plain view in the car); *cf. People v. Nadermann*, 309 Ill. App. 3d 1016, 723 N.E.2d 857 (2000) (stop for minor traffic violation, torn-open cardboard package of beer, and intoxicated passenger did not provide probable cause to search vehicle).

■ For purposes of the present case, we accept the State's argument that there was a valid traffic stop. We accept the State's argument that defendant voluntarily showed Officer Ballard the contents of her purse. We also accept the argument that when Ballard saw the clear plastic bag with a knot in it, which Ballard suspected contained crack cocaine, Ballard had probable cause to check the contents of the bag. See *People v. Hilt*, 298 Ill. App. 3d 121, 125, 698 N.E.2d 233, 236 (1998) (empty, torn, knotted piece of baggie, in plain view, gave officer probable cause to search car; cocaine found near baggie). *Hilt* distinguished other cases where no probable cause was found; noting that, in the case before it, the baggie was a unique container, the officer had previous experience with such containers, and the stop occurred in the early morning hours in an area known for drug transactions. Hilt, 298 Ill. App. 3d at 126, 698 N.E.2d at 236. Once Ballard checked out the contents of the plastic bag, however, and determined that the bag did not contain crack cocaine, Ballard did not have any right to continue going through the purse. See *People v. Hamilton*, 251 Ill. App. 3d 655, 661-62, 622 N.E.2d 130, 135 (1993) ("Once the white powder tested negative for cocaine, Trooper Tracy no longer had probable cause or even a reasonable suspicion to believe that defendant possessed a controlled substance"). Mere suspicion or curiosity is not enough to justify a search. *Stewart*, 242 Ill. App. 3d at 605, 610 N.E.2d at 202; *Hamilton*, 251 Ill. App. 3d at 662, 622 N.E.2d at 135. An officer's authority to investigate a traffic violation may not become a subterfuge in order to obtain other evidence merely based on the officer's suspicion. *Sweborg*, 293 Ill. App. 3d at 305, 688 N.E.2d at 148.

In the present case, there is no indication that Officer Ballard fur-

ther concerned himself with the knotted baggie after he determined that it contained pills. Where an item is seen in plain view, it must be immediately apparent that the object is contraband or evidence of a crime before the object's presence will establish probable cause for a search. *Hilt*, 298 Ill. App. 3d at 124, 698 N.E.2d at 235. The torn knotted baggie constituted probable cause in *Hilt*, but investigation showed it could have contained rock cocaine. Investigation here showed the knotted baggie did not contain cocaine. The trial court's conclusion that legitimate drug items are carried only in prescription bottles and not in clear plastic baggies constitutes mere suspicion, unsupported by any specific fact. After Officer Ballard satisfied himself as to the content of the knotted baggie, there was nothing else in plain view that warranted a continuation of the search.

There are some things an officer can continue to do after the reason for the stop has been satisfied. For example, an officer has the right to ask a defendant for his driver's license, even after determining a license-applied-for sticker (the reason for the stop) is valid. *Bradley*, 292 Ill. App. 3d at 211, 685 N.E.2d at 428; *Koutsakis*, 272 Ill. App. 3d at 163, 649 N.E.2d at 608. A question exists, however, whether an officer may go on to run a computer check on a facially valid driver's license. See *People v. Arteaga*, 274 Ill. App. 3d 781, 782, 655 N.E.2d 290, 291 (1995) (stop for no visible registration, valid registration sticker observed when officer approached vehicle); *People v. McVey*, 185 Ill. App. 3d 536, 539, 541 N.E.2d 835, 837 (1989).

Did Officer Ballard have probable cause to search *the baggie*, or did he have probable cause to search *the purse*? Courts ordinarily define the scope of a search by the express object or purpose. *People v. Baltazar*, 295 Ill. App. 3d 146, 150, 691 N.E.2d 1186, 1189 (1998). Officer Ballard's specific concern here was that the knotted baggie contained crack cocaine. Once that concern was satisfied, Ballard was not free to search further simply to satisfy his curiosity. The scope of a warrantless search of an automobile is defined by the object of the search. *United States v. Ross*, 456 U.S. 798, 824, 72 L. Ed. 2d 572, 593, 102 S. Ct. 2157, 2172 (1982). "Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." *Ross*, 456 U.S. at 824, 72 L. Ed. 2d at 593, 102 S. Ct. at 2172. That principle was reaffirmed in *Acevedo*. *Acevedo*, 500 U.S. at 580, 114 L. Ed. 2d at 634, 111 S. Ct. at 1991. We also note the argument that a woman's purse occupies a peculiar status and is a possession in which a woman expects supreme privacy. *People v. Llanos*, 288 Ill. App. 3d 592, 595, 681 N.E.2d 598, 600 (1997).

Analogizing to search warrants, once "the purposes of the warrant

have been carried out, the authority to search is at an end." 2 W. LaFave, J. Israel & N. King, Criminal Procedure § 3.4(j), at 146 (2d ed. 1999). If we analyze this search in terms of a *Terry* stop, it is clear the investigative detention must be reasonably related in scope to the circumstances that justified the interference in the first place. *People v. Brownlee*, 186 Ill. 2d 501, 518-19, 713 N.E.2d 556, 565 (1999). " 'This much *** is clear: an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop.' " *Brownlee*, 186 Ill. 2d at 519, 713 N.E.2d at 565, quoting *Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion). After he satisfied his concern with the knotted piece of baggie, Ballard had no basis for probable cause other than that defendant was nervous. " '[N]ervousness is not a characteristic that generally invokes reasonable suspicion, especially when one is stopped by the police for a traffic violation.' " *Stewart*, 242 Ill. App. 3d at 606, 610 N.E.2d at 202, quoting *People v. Penny*, 188 Ill. App. 3d 499, 503, 544 N.E.2d 1015, 1017 (1989).

The dissent cites *People v. Smith*, 95 Ill. 2d 412, 447 N.E.2d 809 (1983), for the proposition that once the police officer had probable cause to believe the vehicle contained drugs, the officer could search the vehicle and any containers. In *Smith*, the officer stopped the vehicle because it had an expired safety-inspection sticker. The officer smelled alcohol on the driver's breath and observed in plain view what appeared to be an open, partially full, beer bottle on the floor of the passenger compartment. This constituted probable cause to search the passenger compartment for alcohol. *Smith*, 95 Ill. 2d at 419, 447 N.E.2d at 812. The officer also observed a "one-hitter" box in plain view, and when he entered the vehicle, he saw a hypodermic syringe next to the box. "By the time the officer seized the box he also had probable cause to search the entire vehicle for drugs." *Smith*, 95 Ill. 2d at 419, 447 N.E.2d at 812. In the present case, in contrast, the officer thought a baggie contained crack cocaine, but it did not. The question in the present case is not whether an officer with probable cause to search a vehicle has the right to open a purse; the question is whether the officer here had probable cause. *Smith* would be better authority for this case if upon further examination the officer in *Smith* had realized the driver just had bad breath, the bottle was a soda bottle, the syringe was just a pencil, and the box was only a shoe box. An officer's authority to investigate a traffic violation may not become a subterfuge in order to obtain other evidence merely based on the officer's suspicion. *Sweborg*, 293 Ill. App. 3d at 305, 688 N.E.2d at 148.

As far as the dissent's citation to *Wyoming v. Houghton*, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297 (1999), goes, it should be noted

that the purse here was taken from defendant's person, *not* from the car.

For the foregoing reasons, we reverse the trial court's ruling denying the defendant's motion to suppress. Because the State cannot prevail on remand without the evidence that we have held should have been suppressed, we also reverse her conviction and sentence outright. See *Sweborg*, 293 Ill. App. at 305-06, 688 N.E.2d at 149. The remaining issues raised by the defendant are rendered moot by our decision.

Reversed.

MYERSCOUGH, J., concurs.

JUSTICE STEIGMANN, dissenting:
The majority appropriately sets forth the context of this case, and I agree with much of its analysis. However, because I disagree with the majority's conclusion, I respectfully dissent.

The majority opinion focuses on whether the officer had "probable cause to search *the baggie*, or *** probable cause to search *the purse*." (Emphasis in original.) 315 Ill. App. 3d at 777.

The totality of the facts and circumstances within the officer's knowledge, in particular (1) the presence of a container often used to hold controlled substances (that is, the knotted plastic bag containing unidentified white pills), (2) defendant's pushing the bag toward the bottom of her purse each time she opened the pocket of her purse where the plastic bag was located, and (3) defendant's demeanor during the stop, was sufficient to warrant "a reasonable person standing in the shoes of the police officer[ ] to conclude that a crime ha[d] been committed and the defendant was the person who committed the crime." *People v. Robinson*, 167 Ill. 2d 397, 405, 657 N.E.2d 1020, 1025 (1995).

Once the officer had probable cause to believe that defendant's purse contained drugs, that probable cause allowed him to conduct a warrantless search *of her purse* to determine if it contained drugs or drug paraphernalia. The officer chose to search first the most obvious object within defendant's purse—namely, the knotted plastic bag. Probable cause to search the entirety of the purse was not extinguished upon the officer's determining that the plastic bag did not contain contraband. See *Smith*, 95 Ill. 2d at 420, 447 N.E.2d at 812 (once police officer had probable cause to believe vehicle contained drugs, the officer could search the vehicle and any containers that might hold drugs or drug paraphernalia, and the fact that he searched first in the most obvious location within the vehicle did not invalidate the search).

The majority has taken an unduly restrictive position regarding the scope of the officer's search, perhaps in part because of its belief that "a woman's purse occupies a peculiar status and is a possession in which a woman expects supreme privacy" (315 Ill. App. 3d at 777). However, the recent United States Supreme Court decision of *Houghton*, 526 U.S. 295, 143 L. Ed. 2d 408, 119 S. Ct. 1297, although not directly on point, suggests that purses do not constitute special containers for purposes of warrantless searches. In that case, the Court held that police officers with probable cause to search a car may inspect passengers' belongings—including purses—found in the car if they are capable of concealing the object of the search. *Houghton*, 526 U.S. at 302-03, 143 L. Ed. 2d at 416, 119 S. Ct. at 1301-02. In so holding, the Court reasoned, in pertinent part, as follows:

> "[The cases upon which the respondent relies] turned on the unique, significantly heightened protection afforded against searches of one's person. 'Even a limited search of the outer clothing ... constitutes a severe, though brief, intrusion upon cherished personal security, and it must surely be an annoying, frightening, and perhaps humiliating experience.' [Citation.] Such traumatic consequences are not to be expected when the police examine an item of personal property found in a car." *Houghton*, 526 U.S. at 303, 143 L. Ed. 2d at 417, 119 S. Ct. at 1302.

See also *Houghton*, 526 U.S. at 308, 143 L. Ed. 2d at 420, 119 S. Ct. at 1304 (Breyer, J., specially concurring) ("given this Court's prior cases, I cannot argue that the fact that the container was a purse *automatically* makes a legal difference, for the Court has warned against trying to make that kind of distinction. [Citation.] But I can say that it would matter if a woman's purse, like a man's billfold, were attached to her person. It might then amount to a kind of 'outer clothing,' [citation], which under the Court's cases would properly receive increased protection" (emphasis in original)). Thus, it seems that a purse—at least one that is not "attached" to the person, as is the case here—does not constitute a special container that would receive increased protection. Significantly, defendant here did not claim that her purse was entitled to increased protection.