THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SHAWN SUTTON, Defendant-Appellant.

Fourth District   No. 4—91—0696

Opinion filed June 11, 1992.—Rehearing denied July 14, 1992.

STEIGMANN, J., specially concurring.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE LUND delivered the opinion of the court:

Following a stipulated bench trial in the circuit court of Macon County, defendant was convicted of first degree murder (Ill. Rev. Stat. 1989, ch. 38, par. 9—1) and sentenced to 40 years' imprisonment. No direct appeal was taken, and defendant's petition for leave to file a late notice of appeal was denied. A *pro se* petition for post-conviction relief was denied following an evidentiary hearing. This appeal followed.

Defendant contends:

> (1) the stipulated trial was tantamount to a guilty plea and should be reversed because Supreme Court Rule 402 (134 Ill. 2d R. 402) admonishments were not given; and
>
> (2) he was denied effective assistance of counsel because
>
>> (a) the attorney failed to interview potential alibi witnesses,
>>
>> (b) failed to subject the State's case to meaningful adversarial testing, and
>>
>> (c) failed to file a notice of appeal.

At trial, it was stipulated that Brian Young would testify that on July 9, 1989, he met Howard Taylor and defendant in the "late hours." At that time, they discussed a plan to get the deceased, Gerald Stone, alone with Sutton. Both Taylor and Young went to the residence of Rocky Adams, where they talked with Stone about obtaining some radar detectors. He told them to come back in 15 minutes and when they did, Gerald Stone got into their car, driven by Young. They proceeded to an alleyway behind the old Lincoln School in Decatur, where the car stopped and Sutton climbed into the rear seat next to Stone. Stone attempted to get out of the car, but was pushed back by Sutton. A short distance from the alleyway, Taylor got out of the car. The three remaining in the car, Young, Sutton, and Stone, drove through the streets of Decatur until they encountered Jason Trimby walking his dog. Trimby got into the rear seat,

leaving Sutton on one side of Stone and Trimby on the other. The dog was put in the front seat.

Evidence would show that earlier that year Stone, Sutton, and John Giblin had committed a robbery of a Dairy Queen in Decatur. The case was set to go to trial in July 1989, and Stone was to testify as to Sutton's involvement. In the present case, the State would present testimony of Giblin that both he and Sutton did, in fact, rob the Dairy Queen. Evidence would further show that Sutton recruited four individuals to make statements to the police that they were with Sutton on the day of the robbery. Anthony Spates would testify that Sutton told him he had a robbery case and needed a lawyer. He allegedly said words to the effect, " 'If that nigger snitches on me, I'll tie him up and burn him.' " He then indicated to Spates that he was referring to Stone. Evidence would show that Sutton made similar remarks to various people regarding Stone's impending testimony with respect to the Dairy Queen robbery. He specifically told some of these individuals that he intended to kill Stone.

After picking up Trimby, Young drove around Decatur while Sutton engaged in a lengthy discussion with Stone regarding his upcoming testimony. Young would testify that at one point Sutton announced that he was going to have to kill Stone. There was some discussion as to whether any of the parties had some acid. Trimby volunteered that he did not have any acid, but he did have gasoline. They drove to Trimby's house, dropped off the dog, and picked up a container of gasoline.

Young would then testify that he drove them to a parking lot in Decatur behind the French Quarter West. During this time, both Sutton and Trimby struck Stone in the head with a metal pipe. As they were exiting the car, Sutton again struck Stone on the head with the pipe and Stone's knees buckled. Young would testify that Sutton then told him to leave and return later to pick them up. Sutton and Trimby each grabbed an arm and proceeded to guide Stone to a wooded area behind the French Quarter West. This was the last time Young saw Stone.

Young would testify that when he returned 30 to 40 minutes later, he observed Sutton and Trimby returning up a hill from the wooded area with Trimby carrying the gasoline canister. Young would testify that both Trimby and Sutton told him that Sutton had choked Stone until he passed out, poured gasoline on him, and that Trimby then "lit him up." After dropping Trimby off at his home, Sutton repeated this story to Young.

The following day, Stone's mother reported his absence to police. Stone's driver's license was found near the entrance to the wooded area behind the French Quarter West, and a police canine detail later found the charred and badly decomposed body of a young black male. During the subsequent autopsy a single latent fingerprint was recovered. An expert would testify that this was the fingerprint of Gerald Stone. The autopsy would also show injuries consistent with the area where Stone had allegedly been struck in the head.

Prior to Sutton's trial, Taylor had previously entered a plea of guilty to unlawful restraint. Trimby and Young had previously entered pleas of guilty to the offense of murder.

At the close of the State's evidence, the court asked if defendant wanted to present any additional facts. Defense counsel responded, "No; we would so stipulate." At no time did defense counsel stipulate to the sufficiency of the evidence to prove guilt beyond a reasonable doubt. Addressing Sutton, the court asked if he understood he was giving up his right to a jury trial and if there was any testimony he wanted heard or any questions he would like to ask. Defendant stated that he understood the nature of the trial and that he had no questions.

Prior to the presentation of State's evidence, defendant had been thoroughly questioned regarding his understanding of the nature of the stipulated trial. The court advised him that if he wanted a jury trial he could have one, and the jurors were available that morning. He was asked whether he had been forced or threatened in regard to his decision and was also fully apprised of the nature of the charge against him. The court then asked defendant what he wanted to do. He answered, "Waive my right to a jury trial." At the close of evidence, defendant was advised that the offense of first degree murder carries a penalty of not less than 20 years nor more than 60 years (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—1(a)(1)), or a fine not less than $1 nor more than $10,000 (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—9—1(a)(1)). He was also advised that the sentence could be extended beyond the maximum of 60 years (see Ill. Rev. Stat. 1989, ch. 38, par. 1005—8—2(a)(1)), but that the State was not going to ask for that in this case.

Prior to trial, the State offered to recommend a 40-year sentence in exchange for a plea of guilty. Sutton's attorney, Cynthia Alexander, claims that she discussed the nature of the charge with Sutton and the weight and type of evidence that the People were prepared to bring to trial. They also discussed the State's plea

agreement, and the fact that if they went to trial, the judge could impose a sentence anywhere from 60 years to an extended term, which would be natural life. Sutton wanted to accept the result of negotiation, *i.e.*, the limitation on sentence, but did not want to admit guilt. At this point they discussed the nature of a stipulated trial and the fact that the judge would mostly likely find him guilty and sentence him to 40 years. Sutton agreed to the stipulation. Sutton now claims that at the time of trial he did not realize what was going on and that he was surprised he received a sentence of 40 years' imprisonment.

## (1)

Defendant contends that his stipulated bench trial was tantamount to a guilty plea and, because Supreme Court Rule 402 admonitions were not given, the conviction should be reversed and remanded for a new trial. Illinois courts have uniformly held that a stipulated bench trial procedure is not tantamount to a guilty plea if the defendant presented and preserved a defense. (*People v. Horton* (1991), 143 Ill. 2d 11, 20, 570 N.E.2d 320, 324.) In the present case, defendant offered virtually no defense and preserved no objection. Two pretrial motions were filed; one for a continuance and the other a request for a substitution of judge. Both motions were granted.

■ We need not decide whether the stipulated bench trial was tantamount to a guilty plea, because the warnings given to defendant represent substantial compliance with Rule 402. The constitutional standard by which the validity of a plea of guilty is determined is that the plea be intelligent and voluntary. (*People v. Reeves* (1971), 50 Ill. 2d 28, 29, 276 N.E.2d 318, 319.) "That the plea was 'intelligent and voluntary' may be shown by substantial, and does not require literal, compliance with the provisions of Rule 402." (*People v. McCoy* (1979), 74 Ill. 2d 398, 402, 385 N.E.2d 696, 698, citing *People v. Krantz* (1974), 58 Ill. 2d 187, 317 N.E.2d 559.) The transcript of proceedings shows that defendant was advised of (1) his right to a jury trial; (2) the nature of the charge; (3) the minimum and maximum sentence prescribed by law; (4) his right to present testimony and ask questions about the proceedings; and (5) that his decision was voluntary and not the result of force or threat. Furthermore, prior to the sentencing hearing, the State acknowledged in open court that they would recommend a sentence of 40 years' imprisonment. Defendant was asked if he understood his attorney's advice and if he understood what he was doing, and answered that he did.

The only admonishments missing from the Rule 402 litany are the right to plead not guilty (which he was doing) and the right to confront witnesses. Failure to admonish a defendant of his right to confront adverse witnesses in a stipulated bench trial was found not to be plain error in *People v. Burke* (1980), 85 Ill. App. 3d 939, 407 N.E.2d 728. Regardless, the fact that the sentence imposed was substantially less than the life sentence he would probably have faced in a full trial, along with the court's extensive interrogation of petitioner both prior to and after the State's evidence was heard, amply justify the conclusion that Sutton's decision was both knowing and voluntary.

(2)

■ Defendant next contends that he was denied effective assistance of trial counsel because the attorney failed to interview potential alibi witnesses, failed to subject the State's case to meaningful adversarial testing, and failed to file a notice of appeal. The standard for determining ineffective assistance of counsel is laid out in *People v. Stewart* (1984), 101 Ill. 2d 470, 492, 463 N.E.2d 677, 688:

> "The competency of counsel is presumed and can only be overcome by strong and convincing proof of incompetency. (*People v. McCraven* (1981), 97 Ill. App. 3d 1075, 1077.) The defendant bears the burden of establishing his trial counsel's actual incompetence as reflected in the representation and substantial prejudice resulting therefrom. *People v. Witherspoon* (1973), 55 Ill. 2d 18, 21."

(a)

Defendant contends that his attorney was notified of potential alibi witnesses—his stepbrother Keith Rogers, Keith's wife, and his two infant children—but did not attempt to interview them. Apparently, they would testify that they had all been eating dinner with defendant at the time of the murder. The record of the post-conviction hearing shows that when defendant's attorney telephoned one of these witnesses, his story did not corroborate the defendant's recitation of events. It was her professional opinion that his testimony would not provide an alibi. She claims she was advised of only one other alibi witness, one of Sutton's codefendants who, in her opinion, also would not provide an alibi. The fact that all three codefendants—Young, Trimby, and Taylor—entered guilty pleas prior to Sutton's trial, combined with the overwhelming evidence against him, indicates that a failure to conduct further interviews with fam-

ily members and codefendants was a matter of discretion on the part of counsel. A review of counsel's competency does not extend to those areas involving the exercise of judgment, discretion, or trial tactics. *People v. Witherspoon* (1973), 55 Ill. 2d 18, 22, 302 N.E.2d 3, 5.

Furthermore, defendant never states precisely what the testimony of the alleged alibi witnesses will be. These witnesses did not testify at the post-conviction hearing, nor were any affidavits presented. A claim that a more thorough investigation would have disclosed favorable evidence is based solely on conjecture, which is not sufficient to warrant a reversal. *Witherspoon*, 55 Ill. 2d at 22, 302 N.E.2d at 5.

(b)

Defendant next argues that defense counsel failed to subject the State's case to a meaningful adversarial testing by (1) failing to advance a theory of defense, (2) presenting no closing argument, and (3) failing to hold the prosecution to its burden of proof. Our supreme court recently summarized the law in *Horton*, where it stated:

"Ordinarily, to prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial. (*People v. Albanese* (1984), 104 Ill. 2d 504, 525, citing *Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) To show actual prejudice, defendant must establish that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. ***' *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.

However, there are some circumstances where the two-part test set out in *Strickland* need not be applied. In *People v. Hattery* (1985), 109 Ill. 2d 449, this court stated that where ' "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable." ' (109 Ill. 2d at 461, quoting *United States v. Cronic* (1984), 466 U.S. 648, 659, 80 L. Ed. 2d 657, 668, 104 S. Ct. 2039, 2047.) In these situations, preju-

dice to the accused will be presumed." *Horton,* 143 Ill. 2d at 23, 570 N.E.2d at 325.

In *People v. Hattery* (1985), 109 Ill. 2d 449, 488 N.E.2d 513, defense counsel unequivocally conceded that defendant committed the murders for which he was charged and stated that the only question in the case was whether the death penalty should be imposed. No evidence was presented in defense, and counsel made no closing argument. The supreme court in *Hattery* held:

> "Counsel may not concede his client's guilt in the hope of obtaining a more lenient sentence where a plea of not guilty has been entered, *unless the record adequately shows that defendant knowingly and intelligently consented to his counsel's strategy*." (Emphasis added.) (*Hattery,* 109 Ill. 2d at 465, 488 N.E.2d at 519.)

The court reiterated this point in *Horton,* as well as the principle that *Hattery* should be narrowly construed. *Horton,* 143 Ill. 2d at 24, 570 N.E.2d at 326.

■ In the present case, defense counsel did not at any time concede her client's guilt. She merely stipulated to the existence of the State's evidence. The trial court was still required to find that the evidence was sufficient to prove guilt beyond a reasonable doubt. More importantly, defendant's attorney testified at the post-conviction hearing that the strategy to be used in the stipulated bench trial was fully discussed with defendant prior to trial. This fact was confirmed at trial, where the judge asked defendant if he understood the advice given him by his attorney and if he understood what he was doing. The record clearly shows that defendant knowingly and intelligently consented to his counsel's strategy.

## (c)

■ Finally, defendant argues that defense counsel was ineffective for failure to file a timely notice of appeal. Testimony at the post-conviction hearing was conflicting—defendant's attorney saying an appeal was never requested, while defendant and his mother claimed they were told that an appeal would be filed immediately. Defendant relies on *People v. Scott* (1986), 143 Ill. App. 3d 540, 493 N.E.2d 27, for the notion that counsel's failure to file a timely notice of appeal amounted to ineffective assistance of counsel. In *Scott,* the attorney in question was appointed for the specific reason to file an appeal and did not do so. In the present case, there is no such clear-cut evidence that an appeal was ever requested. Nor is it alleged on what grounds the appeal would be based. To prove ineffec-

tiveness of counsel, defendant must show that his case was prejudiced. (*People v. Weger* (1987), 154 Ill. App. 3d 706, 506 N.E.2d 1072.) To claim only that he was unfairly denied an appeal, by itself, is not sufficient to show prejudice.

For these reasons, we affirm the decision of the post-conviction hearing.

Affirmed.

COOK, J., concurs.

JUSTICE STEIGMANN, specially concurring:

Although I fully concur with the majority opinion, I write separately to address once again the subject of stipulated bench trials.

In *People v. Manley* (1990), 196 Ill. App. 3d 153, 160-65, 552 N.E.2d 1351, 1356-60 (Steigmann, J., concurring in part and dissenting in part), I addressed a defendant's claim that his convictions must be reversed because his stipulated bench trial was tantamount to a plea of guilty and the trial court failed to give him Supreme Court Rule 402(a) admonitions (107 Ill. 2d R. 402(a)). In *Manley*, I wrote the following:

> "To obviate the confusion surrounding stipulated bench trials, a 'bright line rule' can and should be adopted. To this end, the following is respectfully offered: a stipulated bench trial is, in all cases, tantamount to a guilty plea, requiring that Rule 402(a) admonitions be given, unless after the stipulation a question remains regarding the *sufficiency* of the State's evidence to sustain a conviction. An example of such a circumstance would be the defense offering to waive a jury trial and stipulate to the entire State's case as set forth in the various police reports, while maintaining that the State fails to meet its burden of proof because all available evidence would be insufficient to prove beyond a reasonable doubt the venue of the alleged offense. Another example would be a defense stipulation to the entire State's case in a prosecution for unlawful use of weapons, reserving for the trial court's determination the question of whether the State's evidence shows that the defendant was in constructive possession of a gun found under the front seat of a vehicle when the defendant was seated in the backseat. See Ill. Rev. Stat. 1987, ch. 38, par. 24—1(a)(4)." (Emphasis in original.) *Manley*, 196 Ill.

App. 3d at 164-65, 552 N.E.2d at 1359 (Steigmann, J., concurring in part and dissenting in part).

In *Manley*, I had argued that defense counsel's intention "to appeal some pretrial ruling, such as the denial in this case of the motion to suppress, is irrelevant." (*Manley*, 196 Ill. App. 3d at 164, 552 N.E.2d at 1359 (Steigmann, J., concurring in part and dissenting in part).) However, in *People v. Horton* (1991), 143 Ill. 2d 11, 22, 570 N.E.2d 320, 325, the supreme court adopted the rule "uniformly applied by the appellate court that a stipulated bench trial is not tantamount to a guilty plea if the defendant presented and preserved a defense." By citing approvingly a long list of appellate court decisions that conflict with my above statement in *Manley*, the supreme court in *Horton* made clear that it did not adopt the "bright line rule" I proposed in *Manley*.

Even though the supreme court in *Horton* did not go as far as I proposed in deeming Rule 402(a) admonitions to be applicable to all stipulated bench trials (except under certain limited circumstances), I write specially to point out that trial courts presented with stipulated bench trials still *can* (and I think should) utilize the procedures I proposed in *Manley*. Doing so would literally require only a few extra *seconds* in most cases. The present case proves this point. Surely here it would have taken the court only a few seconds to inform defendant that by stipulating to the State's evidence, he was giving up his right to confront the witnesses who would be testifying against him.

Further, for the reasons I explained in *Manley*, I still believe the procedures I proposed therein are fairer to defendants because those procedures ensure a defendant's knowing and willing participation in the stipulated bench trial. Given the onerous consequences that often flow from the seemingly inevitable guilty verdicts that follow stipulated bench trials, I do not think it too much to ask trial courts that they spend the minimal time necessary to give a full Rule 402(a) admonition to a defendant before accepting the parties' offer to present a stipulated bench trial. The trial courts owe it to themselves and to defendants to do no less when, as a result of a stipulated bench trial, a defendant who has walked into court presumed innocent of the charge against him leaves convicted of that charge pursuant to his own acquiescence.