NO. 4-03-0351

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellee,

          v.

ANTHONY W. BARTIMO,

          Defendant-Appellant.

)

)

)

)

)

)

)

)

  Appeal from

  Circuit Court of 

  Woodford County

  No. 02CF24

  Honorable

  Charles M. Feeney­,

  Judge Presiding.

________________________________________________________________

JUSTICE TURNER delivered the opinion of the court:

In March 2002, the State charged defendant, Anthony W. Bartimo, with unlawful possession of a controlled substance, unlawful use of a weapon, and unlawful possession of cannabis.  In July 2002, defendant filed a motion to suppress, which the trial court denied.  In January 2003, the trial court found defendant guilty of unlawful use of a weapon and unlawful posses­sion of cannabis.  The court denied defendant's posttrial motion and sentenced him to 24 months' probation on each offense.

On appeal, defendant argues (1) the trial court erred in denying his motion to suppress, (2) he was wrongfully convicted of unlawful use of a weapon, and (3) he received ineffective assistance of counsel.  We affirm.   
  

I. BACKGROUND

In March 2002, the State charged defendant by information with (1) unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2002)), alleging he knowingly possessed less than 15 grams of a substance containing cocaine; (2) unlawful use of a weapon (720 ILCS 5/24-1(a)(4) (West 2002)), alleging he know­ingly possessed in a vehicle a 9-millimeter handgun; and (3) unlawful posses­sion of cannabis (720 ILCS 550/4(c) (West 2002)), alleging he knowingly possessed more than 10 grams but less than 30 grams of a substance containing cannabis.

In July 2002, defendant filed a motion to suppress evidence, alleging he was illegally seized by an officer for an expired license plate when the plates were valid as evidenced by a temporary sticker.  In August 2002, the State dismissed the unlawful-possession-of-a-substance-containing-cocaine charge.  In September 2002, the trial court conducted a hearing on defendant's motion to suppress.  Defendant testified he was driving his car on March 11, 2002, at about 11 p.m.  He testified his license plates expired on November 30, 2001, but the "yellow 'T' sticker" extended them for 120 days.  He received a new set of license plates a "few days prior to being stopped," and they were in the backseat of the car when the officer pulled him over.  The State moved for a directed finding on defendant's motion, which the trial court denied.

The State called Woodford County deputy sheriff Shawn Trent, who testified he observed a black Audi on March 11, 2002, and he ran the registration plate on the vehicle.  A dispatcher advised him the registration expired in November 2001.  Prior to stopping the vehicle, Deputy Trent observed a November 2001 sticker on the back of the license plate.  He then stopped the vehicle to investigate the status of the plates.  After shining his spotlight on defendant's vehicle, he noticed a temporary registration sticker.  At the time of the stop, he was unaware of how long a "T" sticker was valid.  The trial court found Deputy Trent had a "good-faith basis" to stop the vehicle because of the expired plates and denied defendant's motion.

In January 2003, defendant's bench trial commenced.  Deputy Trent testified to the expired license plate and his stop of defendant's vehicle.  Upon approaching the vehicle, Trent noticed a "hard-cased shotgun or rifle case protruding from the trunk" and an unzipped soft-sided shotgun or rifle case on the floorboard of the backseat.  Trent then asked defendant for identi­fication and he presented a traffic citation in lieu of his license.  Trent returned to his squad car and checked defendant's license.  

Upon returning to defendant's car, Trent noticed defendant with his hand "behind the passenger seat," which he later removed.  Deputy Trent then asked defendant if he had any weapons in the vehicle.  Trent stated defendant appeared "nervous" and advised him that he had a rifle in the trunk.  When asked if he had other firearms in his vehicle, defendant responded "No."  When Deputy Trent asked for defendant's consent to search the vehicle, defendant "did not respond."  Trent again asked defendant if he had any weapons in the vehicle.  Appearing nervous, defendant reached toward "the center console passenger seat area like he was going to grab an object."  Trent again asked him about any other weapons, and defendant stated "he had a pistol in the laundry basket on the passenger seat next to him."  Trent then ordered defendant out of the car to "get him away from the pistol" and for officer safety.  Trent began searching defendant, who "reached down towards his waistband consistent with producing a weapon," and Trent handcuffed him.  A frisk of defendant for weapons turned up a "wooden dugout," a "one-hitter pipe," and a "[B]aggie of cannabis" in his pants pocket.  Trent searched the car and found cannabis and an unloaded 9-millimeter pistol in a nylon holster and "an ammunition pouch in the front of the holster with a loaded magazine" in a laundry basket in the rear seat.  Trent also found a rifle in a case protruding from the car's trunk area.  

Defendant testified he uses his 9-millimeter handgun for target shooting, and he had targets and other similar items in his car when he was stopped.  He stated he placed the handgun "all the way to the bottom of the [laundry] basket," and it was unloaded and in a closed holster.  He testified he could not have accessed the gun from the driver's seat.  When the officer returned to his car, defendant had his hand behind the passenger seat looking for his license plates.  Defendant stated the holster did not completely cover the gun.  He also admitted owning the marijuana on his person and in his car.  

Following closing arguments, the trial court found defendant guilty of unlawful use of a weapon and unlawful posses­sion of cannabis.  In February 2003, defendant filed a posttrial motion for a new trial, alleging, 
inter
 
alia
, the State failed to prove him guilty of unlawful use of a weapon beyond a reasonable doubt and he received ineffective assistance of counsel.  In March 2003, the trial court denied the motion.  Thereafter, the court sentenced defendant to 24 months' probation on each offense along with various fines.  This appeal followed. 

II. ANALYSIS

A. Motion To Suppress

Defendant argues the trial court erred in denying his motion to suppress.  We disagree.

1. 
Standard
 
of
 
Review
 
and
 
Burden
 
of
 
Proof

In reviewing a motion to suppress on appeal, mixed questions of law and fact are presented.  
People v. Gherna
, 203 Ill. 2d 165, 175, 784 N.E.2d 799, 805 (2003).  A trial court's assessment of witness credibility and factual determinations will be reversed only if manifestly erroneous.  
People v. Anthony
, 198 Ill. 2d 194, 200-01, 761 N.E.2d 1188, 1191 (2001).  However, the ultimate determination of whether the evidence is suppressed is entitled to 
de
 
novo
 review.  See 
People v. Crane
, 195 Ill. 2d 42, 51, 743 N.E.2d 555, 562 (2001).

On a motion to suppress evidence, the defendant has the burden of proving the search and seizure were unlawful (725 ILCS 5/114-12 (West 2002)).  "However, once the defendant makes a 
prima
 
facie
 showing of an illegal search and seizure, the burden shifts to the State to produce evidence justifying the intrusion."  
People v. Ortiz
, 317 Ill. App. 3d 212, 220, 738 N.E.2d 1011, 1018 (2000). 

Defendant argues the trial court misapplied the eviden­tiary burden.  We disagree.  Defendant testified in support of his motion to suppress.  After defense counsel indicated no further evidence would be presented, the State moved for a directed finding.  The trial court denied the motion, and the State went forward with its evidence to establish the officer was justified in his intrusion.  Defendant's claim that the trial court incorrectly understood the burden has no support in the record.  The court commented on defendant's burden in the context of his motion to suppress evidence and consistent with the burden required of the movant in that in­stance.  Further, defendant's claim that 
his
 motion for a directed verdict at the close of his presentation of evidence may have been successful if the court had understood the burden is meritless because it was the State that moved for a directed finding.  Thus, we find no error.

2. 
The
 
Traffic
 
Stop

The fourth amendment to the United States Constitution

guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const., amend. IV.  Similarly, the Illinois Constitution affords citizens with "the right to be secure in their persons, houses, papers[,] and other possessions against unreasonable searches, [and] seizures."  Ill. Const. 1970, art. I, §6.  Our supreme court has interpreted the search and seizure clause of section 6 in a manner consistent with the United States Supreme Court's fourth amendment jurisprudence.  
People v. Gonzalez
, 204 Ill. 2d 220, 224, 789 N.E.2d 260, 264 (2003). 

When a police officer observes a driver commit a traffic violation, the officer is justified in briefly detaining the driver to investigate the violation.  
People v. Sorenson
, 196 Ill. 2d 425, 433, 752 N.E.2d 1078, 1084 (2001)
.  A temporary detention of an individual during a vehicle stop constitutes a seizure of his person within the fourth amendment, even if the stop is brief and for a limited purpose.  
Whren v. United States
, 517 U.S. 806, 809-10, 135 L. Ed. 2d 89, 95
, 116 S. Ct. 1769, 1772
 (1996).  "An automobile stop is thus subject to the constitutional imperative that it not be 'unreasonable' under the circumstances.  As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  
Whren
, 517 U.S. at 810, 145 L. Ed. 2d at 95
, 116 S. Ct. at 1772.

"Because a traffic stop is more analogous to a 
Terry
 investigative stop (see 
Terry v. Ohio
, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968)) than to a formal arrest, the reasonableness of a traffic stop is analyzed under 
Terry
 principles.  [Citation.]  A 
Terry
 analysis involves a dual inquiry: '(1) "whether the officer's action was justified at its inception," and (2) "whether it was reasonably related in scope to the circumstances which justified the interference in the first place."'  
Gonzalez
, 204 Ill. 2d at 228, [789 N.E.2d at 266,] quoting 
Terry
, 392 U.S. at 19-20, 20 L. Ed. 2d at 905, 88 S. Ct. at 1879."  
People v. Bunch
, 207 Ill. 2d 7, 13-14, 796 N.E.2d 1024, 1029 (2003).

In the case 
sub
 
judice
, defendant acknowledges Deputy Trent had probable cause to initiate the traffic stop.  Deputy Trent received the dispatcher's report that the license plates on defendant's car were expired.  According to section 3-413(f) of the Illinois Vehicle Code, "[n]o person shall operate a vehicle *** upon which is displayed an Illinois registration plate, plates[,] or registration stickers after the termination of the registration period for which issued or after the expiration date."  625 ILCS 5/3-413(f) (West 2002).  Thus, the initial stop of defendant's car was justified.  

3. 
Defendant's
 
Arrest

Under the second prong of the 
Terry
 analysis, the length of the detention and the manner in which it was carried out are considered.  
Bunch
, 207 Ill. 2d at 14, 796 N.E.2d at 1029
.  The United States Supreme Court has stated "an investi­gative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop."  
Florida v. Royer
, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238, 103 S. Ct. 1319, 1325 (1983) (plurality opinion).  Upon initiating a minor traffic stop, a police officer may briefly detain the driver to request his driver's license and determine its validity and, under certain circumstances, conduct a speedy warrant check.  
Ortiz
, 317 Ill. App. 3d at 220, 738 N.E.2d at 1018.  
Once a check of a driver's license and any warrant information is completed, "if no further suspicion is aroused, the traffic stop must cease and the individual should no longer be detained."  
Ortiz
, 317 Ill. App. 3d at 220, 738 N.E.2d at 1018.  The police officer should then issue a warning ticket or citation and allow the driver to continue on his way.  See 
People v. Koutsakis
, 272 Ill. App. 3d 159, 164, 649 N.E.2d 605, 609 (1995).

In this case, Deputy Trent testified he stopped defen­dant's car for the expired license plates and did not notice the temporary registration sticker until he shined his spotlight on the car.  Defendant argues Deputy Trent's reason for stopping him then no longer existed and further intrusion was unnecessary and unwarranted.  We find the circumstances warranted Deputy Trent's approach to defendant's car and the resulting questions put forth to defendant.  

In 
People v. Bradley
, 292 Ill. App. 3d 208, 209, 685 N.E.2d 426, 427 (1997), an officer stopped the defendant's car, which had no license plates and a "license-applied-for (LAF) sticker with an unreadable expiration date."  The officer approached the car and determined the LAF sticker on the rear windshield was valid.  
Bradley
, 292 Ill. App. 3d at 209, 685 N.E.2d at 427.  Upon granting the defendant's motion to suppress, the trial court found that once the officer determined the LAF sticker was valid, the purpose of the stop was complete and the officer "could do nothing more than explain to defendant the reason he had been stopped."  
Bradley
, 292 Ill. App. 3d at 210, 685 N.E.2d at 427.  

On appeal, the State argued that after the officer had properly stopped the defendant to check the validity of the LAF sticker, he could then approach the defendant and request to see his driver's license.  
Bradley
, 292 Ill. App. 3d at 210, 685 N.E.2d at 427.  This court held that once the officer determined the LAF sticker was valid, the officer "could then approach defendant, explain to him why he had been stopped, and ask defendant to produce his driver's license."  
Bradley
, 292 Ill. App. 3d at 211, 685 N.E.2d at 428.  

In 
People v. Adams
, 225 Ill. App. 3d 815, 816, 587 N.E.2d 592, 593 (1992), an officer initiated a traffic stop of the defendant's car for not having any visible registration plates.  The officer shined his spotlight on the vehicle and noticed a valid license-applied-for slip in the rear window.  
Adams
, 225 Ill. App. 3d at 816, 587 N.E.2d at 593-94.  The officer went to the defendant's car to explain the reason for the stop, and later events led to the defendant's driving under the influence (DUI) arrest.  
Adams
, 225 Ill. App. 3d at 817, 587 N.E.2d at 594.  

On appeal, the defendant argued that once the officer determined the LAF form was valid, no justification existed to detain him further and arrest him for DUI.  
Adams
, 225 Ill. App. 3d at 817, 587 N.E.2d at 594.  This court held that it 

"naturally follows that once it was determined that defendant had a valid license-applied-for form displayed, the officer would approach the defendant, explain the reason for the stop, apologize, and advise defendant he was free to leave.  In so doing, any obser­vations the officer made may form the basis of probable cause to arrest the defendant for a reason totally unrelated to the stop."  
Adams
, 225 Ill. App. 3d at 819, 587 N.E.2d at 595.

In this case, Deputy Trent observed the temporary sticker after he stopped the car.  Defendant argues the officer's suspicion was allayed and no further intrusion was justified. However, Deputy Trent was not required to drive away and leave defendant wondering why the stop had been initiated in the first place.  Instead, Trent could approach defendant's vehicle to further inspect the "T" sticker, explain the reason for the stop, apologize, and advise defendant he was free to leave.   

   Moreover, the fact that Deputy Trent did not know the

length of the temporary sticker's validity is of no consequence.  Deputy Trent stopped defendant for having expired plates on his car.  Upon further inspection after the stop, Trent noticed the temporary sticker.  His incorrect belief as to the sticker's validity did not prohibit him from then approaching defendant's car.  
Thus, as Deputy Trent's suspicions concerning the purpose of the stop had not been fully answered, his approach of defendant's car to ask for a driver's license was reasonable.  

Defendant does not challenge the officer's actions after he approached the car and engaged defendant in conversation.
  Instead, defendant argues Trent had no basis for further intrusion upon seeing the temporary renewal sticker.  As we have found the further intrusion valid, we need not analyze the later search of defendant's person and vehicle.

Nonetheless, we note the officer, upon initially approaching the vehicle, noticed a gun case protruding from the trunk and an unzipped soft-sided gun case in the backseat floorboard.  The officer asked for defendant's identification and was presented a traffic citation instead of defendant's license.  The officer returned to his squad car, checked defendant's license, and upon returning to defendant's car noticed defendant with his hand behind the passenger's seat.  The officer thought defendant appeared nervous and asked defendant if he had any weapons in the vehicle.  Defendant responded "no" but failed to respond to the officer's request to search the vehicle.  When the officer again asked if defendant had any weapons in the vehicle, defendant admitted he had a pistol in the laundry basket on the passenger's seat next to him.  Thus, the intrusion leading to the discovery of the weapon was justified based upon the officer's observations, the officer's legitimate questions posed to defendant based upon the officer's observations, and defendant's actions and responses.
  

4. 
Hearsay
 
Testimony

Defendant next argues the trial court erred in admitting Deputy Trent's alleged hearsay testimony.  During the motion to suppress, defense counsel asked Deputy Trent whether a temporary sticker was good for 120 days.  Trent stated he was unaware at the time of the stop, but after the arrest he "talked to somebody with the Secretary of State's office, and they advised the temporary [sticker] was good for 90 days."  Defense counsel moved to strike, but the trial court overruled the objection.

"Hearsay evidence is an out-of-court statement offered to prove the truth of the matter asserted, and is generally inadmissible unless it falls within a recognized exception."  
People v. Cloutier
, 178 Ill. 2d 141, 154, 687 N.E.2d 930, 936 (1997).  
The State argues Deputy Trent's statement was not presented to establish that temporary stickers were valid for 90 days and thus does not constitute hearsay, but instead shows Trent's state of mind.  We agree with defendant that what the Secretary of State's office told Trent is irrelevant.  However, based upon our discussion in the preceding section, we disagree it prejudiced defendant and find its admission into evidence harmless error.  Moreover, the trial court is presumed to consider only proper evidence.  
People v. Todd
, 154 Ill. 2d 57, 69, 607 N.E.2d 1189, 1195 (1992).  The record does not indicate the trial court relied on this testimony in making its ultimate determination on the motion to suppress, and we find Deputy Trent's testimony harmless and without prejudice to defendant.

5. 
License
 
Renewal
 
Sticker

Defendant argues the trial court's failure to determine the correct period of time for a valid temporary renewal sticker resulted in an abuse of discretion in its ruling on his motion to suppress.  We disagree.

The length of time a license renewal sticker is valid is irrele­vant to the question of whether Deputy Trent could approach defendant after stopping him for an expired license plate and later discovering the renewal sticker.  If Trent had known the renewal sticker was valid for 120 days, he could still have walked up to defendant's car, explained his error, and allowed him to be on his way.  Defendant's due process concerns are therefore unfounded.    

B. Unlawful Use of a Weapon

1. 
Sufficiency
 
of
 
the
 
Evidence

Defendant argues the evidence at trial was insufficient to convict him of unlawful use of a weapon.  We disagree.

When reviewing a challenge to the sufficiency of the evidence, in a criminal case, the relevant inquiry is whether, when viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Pollock
, 202 Ill. 2d 189, 217, 780 N.E.2d 669, 685 (2002).  It is the responsibility of the trier of fact to determine the credibility of witnesses and the weight given to their testimony, to resolve conflicts in the evidence, and to draw reasonable inferences from that evidence.  
People v. Ortiz
, 196 Ill. 2d 236, 259, 752 N.E.2d 410, 425 (2001).  A court of review will not overturn the verdict of the fact finder "unless the proof is so improbable or unsatisfactory that there exists a reasonable doubt of the defendant's guilt."  
People v. Maggette
, 195 Ill. 2d 336, 353, 747 N.E.2d 339, 349 (2001).

"A person commits the offense of unlawful use of weapons when he knowingly:

* * *

(4) Carries or possesses in any vehicle or concealed on or about his person *** any pistol, revolver, stun gun or taser or other firearm, except that this subsection (a)(4) does not apply to or affect transportation of weapons that meet one of the following conditions:

(i) are broken down in a non[]functioning state; or

(ii) are not immediately accessible; or

(iii) are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card[.]"  720 ILCS 5/24-1(a)(4) (West 2002).

The defendant has the burden of proving he falls within the exceptions set forth in section 24-1(a)(4) by a preponderance of the evidence.  
People v. Martinez
, 285 Ill. App. 3d 881, 884, 674 N.E.2d 944, 947 (1996).  "Accessibility refers to the proximity of the weapon to the defendant and the capability of the defendant to reach the weapon.  In other words, a weapon is 'immediately accessible' if it is within 'easy reach' of the defendant."  
People v. Shields
, 337 Ill. App. 3d 1063, 1064, 787 N.E.2d 342, 343 (2003), citing 
Martinez
, 285 Ill. App. 3d at 884, 674 N.E.2d at 947.

In this case, Deputy Trent testified he found the holstered pistol in a laundry basket in the backseat of defendant's car.  He stated the defendant's vehicle was "not a large car" and a front seat occupant could "probably touch that basket" in the backseat if he reached back.  Deputy Trent located the pistol at the bottom of the laundry basket under clothes and paper targets.  Defendant testified he placed the gun "all the way to the bottom of the basket," and he believed "[t]here was no way [he] could have accessed the gun from the driver's seat."  The trial court determined that defendant could have easily grabbed the basket or pulled it to him to gain access to the weapon.  Thus, the court found the weapon was immediately access­ible.

In 
People v. Smith
, 71 Ill. 2d 95, 99, 374 N.E.2d 472, 473 (1978), a jury convicted the defendant of unlawful use of weapons.  The supreme court affirmed his conviction, finding a gun in a locked glove compartment was immediately accessible to the driver even though the defendant claimed he had no key and could not access the glove compartment while driving.  
Smith
, 71 Ill. 2d at 100, 374 N.E.2d at 474.  In 
People v. Bolling
, 181 Ill. App. 3d 845, 850, 537 N.E.2d 1100, 1103 (1989), the appellate court affirmed the defendant's unlawful use of weapons conviction, finding the driver could have easily retrieved his handgun from a zippered athletic bag located in the rear seat of his car.

 We find the evidence in this case was sufficient to allow the trial court to find the pistol was immediately accessible to defendant.  The trial court, as the finder of fact, has the responsibility to draw reasonable inferences from the evidence, and in viewing the evidence in a light most favorable to the State, we hold the trial court could have found the weapon was immediately accessible beyond a reasonable doubt.

We need not address the merits of our colleague's dissent because defendant did not argue his gun was enclosed in a case, but he instead argued the gun's placement in a holster at the bottom of a laundry basket filled with clothes rendered it inaccessible.  The trial court rejected this argument, and the State presented sufficient evidence to support the court's finding beyond a reasonable doubt.­

2. 
Statutory
 
Interpretation

Defendant argues the trial court misinterpreted the unlawful use of weapons statute and its "case" or "other container" exceptions, requiring reversal of his conviction.  We disagree.

First, defendant sets forth a hypothetical regarding enclosing a handgun in a Tupperware container in the passenger seat versus the same gun in a holster in a cardboard box in the backseat.  However, we need not analyze defendant's hypothetical because the trial court had ample evidence before it to conclude the holstered gun, with parts of the gun exposed, was immediately accessible and not enclosed in a case.

Second, defendant appears to ask this court to insert the word "locked" into section 24-1(a)(4)(iii) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/24-1(a)(4)(iii) (West 2002)) to promote highway safety.  Defendant maintains a proper construction of the statute would require guns to be unloaded and enclosed in a 
locked
 case, firearm carrying box, shipping box, or other 
locked
 container.  However, defendant's argument is unavailing and irrelevant to his case on appeal considering his weapon was not enclosed in a locked case or container.  

Moreover, courts "cannot read words into a statute that are not there."  
Chicago Tribune Co. v. Board of Education of the City of Chicago
, 332 Ill. App. 3d 60, 67, 773 N.E.2d 674, 680 (2002).  Further, "'[u]nder the doctrine of separation of powers, courts may not legislate, rewrite[,] or extend legislation.  If the statute as enacted seems to operate in certain cases unjustly or inappropriately, the appeal must be to the General Assembly, and not to the court.'"  
Michigan Avenue National Bank v. County of Cook
, 191 Ill. 2d 493, 522, 732 N.E.2d 528, 544 (2000), quoting 
People v. Garner
, 147 Ill. 2d 467, 475-76, 590 N.E.2d 470, 474 (1992).  Defendant offers no authority to support his request for us to add words to the unlawful use of weapons statute to avoid its alleged "absurd" construction.  Thus, we have no basis to vacate defendant's conviction.

C. Assistance of Counsel

Defendant also argues he received ineffective assistance of counsel.  We disagree.

Claims of ineffective assistance of counsel are evaluated under the two-pronged test set forth in 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), which requires a showing that counsel's performance was deficient and resultant prejudice.  To establish deficient performance, the defendant must show his attorney's performance fell below an objective standard of reasonableness.  
Cloutier
, 178 Ill. 2d at 163, 687 N.E.2d at 940, citing 
Strickland
, 466 U.S. at 687-88, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  Prejudice is established when there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  
Cloutier
, 178 Ill. 2d at 163, 687 N.E.2d at 940, citing 
Strickland
, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068.  A defendant must satisfy both prongs of the 
Strickland
 standard, and the failure to satisfy either prong precludes a finding of ineffective assistance of counsel.  
People v. Patterson
, 192 Ill. 2d 93, 107, 735 N.E.2d 616, 626 (2000).
  

Defendant argues his trial counsel failed to establish the 120-day duration of the "T" sticker, which allowed the trial court and prosecutor to assume its duration was 90 days.  However, as noted earlier, the duration of a valid "T" sticker did not change the circumstances surrounding the stop. 

Defendant also argues his trial counsel was ineffective for failing to object to testimony regarding the discovery of defendant's new license plates in his car following the stop and the trial court's later reference to such testimony.  
Generally, "[a] review of counsel's competency does not extend to those areas involving the exercise of judgment, discretion, or trial tactics."  
People v. Sutton
, 229 Ill. App. 3d 960, 967, 594 N.E.2d 752, 756 (1992).  Further, "defense counsel is not required to make losing motions or objections in order to provide effective legal assistance."  
People v. Kelley
, 304 Ill. App. 3d 628, 636, 710 N.E.2d 163, 170 (1999).  
 

The record indicates defense counsel offered objections throughout the proceedings.  The making of objections is ordinarily a matter of trial strategy (
People v. Pecoraro
, 175 Ill. 2d 294, 327, 677 N.E.2d 875, 891 (1997)), and we do not find defense counsel's representation fell outside the range of reasonable professional assistance.  Moreover, we find no preju­dice because the trial court did not focus on the newly found license plates but instead determined the stop was justified considering the expired plates and later discovery of the "T" sticker.  Therefore, defendant's claim of ineffective assistance of counsel fails.

III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I agree that defendant's vehicle was properly stopped because of the apparently expired registration plates.  I also agree the officer was not required to immediately walk away from the vehicle when he saw the "T" sticker.  

I disagree, however, that defendant was properly convicted of the offense of unlawful use of a weapon (720 ILCS 5/24-1(a)(4) (West 2002)).  I would reverse that conviction and vacate that sentence.  

The evidence is clear that the handgun in question was unloaded, in a snap-closed nylon holster, located in the passenger-side backseat.  Section 24-1(a)(4) does not apply to weapons that "are unloaded and enclosed in a case, firearm carrying box, shipping box, or other container by a person who has been issued a currently valid Firearm Owner's Identification Card."  720 ILCS 5/24-1(a)(4)(iii) (West 2002).  A "holster" is a "case."  Merriam-Webster's Collegiate Dictionary 554 (10
th ed. 2000).  "Enclose" means 

"1 a (1): to close in: SURROUND (<a porch 

with glass>) (2) to fence off (common land) for 

individual use b: to hold in: CONFINE."  Mer-

riam-Webster's Collegiate Dictionary 380 (10
th 

ed. 2000).   

"Enclosed" means "held in" or "confined," such as cattle that are enclosed in a pen.  The handgun here was clearly held in or confined in the snap-closed nylon holster, and accordingly there can be no violation of section 24-1(a)(4).

The State argues that "By using this holster which left parts of the gun exposed, the defendant failed to bring himself within the exemption," citing a definition of "case" found in the Wildlife Code (520 ILCS 5/1.2b-1 (West 2002)): 

"[']Case['] means a container specifically 

designed for the purpose of housing a gun or 

bow and arrow device which 
completely
 
en-

closes
 such gun or bow and arrow device by 

being zipped, snapped, buckled, tied[,] or 

otherwise fastened with no portion of the 

gun or bow and arrow device exposed."  

(Emphasis added.)

The legislature chose to employ an unusual definition of "enclosed case" in the Wildlife Code.  The legislature, however, did not choose to employ that definition in the Criminal Code.  

The Criminal Code is broader than the Wildlife Code.  The Criminal Code does not just provide an exemption for cases, it provides an exemption for cases, firearm carrying boxes, shipping boxes, and "other container[s]."  Even if the words from the Wildlife Code, "no portion of the gun *** exposed," were held to apply to the word "case" in section 24-1(a)(4), there is no justification for applying them to the word "container."  

The words, however, should not even be applied to the word "case."  The words are simply not contained in or referred to in section 24-1(a)(4).  As the majority points out:

"[C]ourts 'cannot read words into a statute 

that are not there.'  
Chicago Tribune Co.

v. Board of Education of the City of Chicago
, 

332 Ill. App. 3d 60, 67, 773 N.E.2d 674, 680 

(2002).  Further, '"[u]nder the doctrine of 

separation of powers, courts may not legis-

late, rewrite[,] or extend legislation.  If 

the statute as enacted seems to operate in 

certain cases unjustly or inappropriately, 

the appeal must be to the General Assembly, 

and not to the court."'  
Michigan Avenue

National Bank v. County of Cook
, 191 Ill.

2d 493, 522, 732 N.E.2d 528, 544 (2000), 

quoting 
People v. Garner
, 147 Ill. 2d 467, 

475-76, 590 N.E.2d 470, 474 (1992)."  Slip

op. at 19.

The proscriptions of a criminal statute must be clearly defined.  The statute must provide a person of ordinary intelligence a reasonable opportunity to distinguish between lawful and unlawful conduct so that he or she may act accordingly.  
People v. Maness
, 191 Ill. 2d 478, 483-84, 732 N.E.2d 545, 549 (2000).  No one may be required at peril of life, liberty, or property to speculate as to the meaning of penal statutes.  "'All are entitled to be informed as to what the State commands or forbids.'"  
City of Chicago v. Morales
, 177 Ill. 2d 440, 450, 687 N.E.2d 53, 60 (1997), 
aff'd
, 527 U.S. 41, 144 L. Ed. 2d 67, 119 S. Ct. 1849, (1999), quoting 
Lanzetta v. New Jersey
, 306 U.S. 451, 453, 83 L. Ed. 888, 890, 59 S. Ct. 618, 619 (1939).  "[T]he statute must provide sufficiently definite standards for law enforcement officers and fact finders that its application does not depend merely on their private conceptions."  
People v. Hickman
, 163 Ill. 2d 250, 256, 644 N.E.2d 1147, 1150 (1994). It is irrelevant that section 24-1(a)(4) would make better sense if the words "with no portion of the gun exposed" were read into it.

Apparently the State would concede there was no violation here if the holster had been large enough to completely cover the handgun.  What sense does that make?  The handgun would have been equally accessible if the holster had been larger.  Perhaps the State would concede there was no violation if the handgun were contained in a brown paper bag with the top folded shut.  Such a handgun would not have any portion exposed, but the State would probably insist that the bag be "zipped, snapped, buckled, tied[,] or otherwise fastened."  A paper clip?  

There is no justification for reading the words of section 24-1(a), "enclosed in a case *** or other container," to include the requirement that no portion of the gun be exposed.  The unlawful use of a weapon conviction should be reversed.