#26393, #26395-aff in pt, rev in pt & rem-JKK

**2013 S.D. 37**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,            Plaintiff and Appellant,

      v.

BRIAN DENNIS AMICK,             Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
JERAULD COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE TIM D. TUCKER
Judge

* * * *

MARTY J. JACKLEY
Attorney General

CRAIG M. EICHSTADT
Assistant Attorney General
Pierre, South Dakota            Attorneys for plaintiff
                                            and appellant.

JOHN R. STEELE of
Steele & Steele, PC
Plankinton, South Dakota        Attorneys for defendant
                                            and appellee.

* * * *

ARGUED ON MARCH 20, 2013

OPINION FILED **05/08/13**

KONENKAMP, Justice

[¶1.]        A deputy sheriff stopped a pickup truck because he did not see the vehicle's temporary license permit on the rear window. A DUI arrest followed. On a motion to suppress, the circuit court concluded that the deputy unconstitutionally extended the scope of the stop by initiating contact with the driver when the deputy could have first confirmed that the temporary license permit was valid. On appeal, the State asserts that the deputy lawfully approached the driver. By notice of review, the driver argues that the stop was invalid at its inception.

## Background

[¶2.]        On September 11, 2011, Deputy Sheriff Shane Mentzer was on patrol in Wessington Springs. It was the weekend of the Bull Bash Rodeo, an event drawing many visitors to town. At 3:25 a.m., he noticed a black four-door, crew cab pickup. Considering the late hour, he followed the truck and noticed that it had no license plate in the rear license plate bracket. Deputy Mentzer activated his lights and initiated a stop. His in-car video camera recorded much of what happened.

[¶3.]        In the first thirty-five seconds of the video, the deputy can be seen walking from his patrol car toward the driver's side of the pickup. He directed his flashlight into the left side of the pickup box. Almost simultaneously, a person can be seen sitting up in the box for just a moment. Deputy Mentzer pointed his light into the box for a second time and continued walking. As he approached the driver, he shined his flashlight into the open rear passenger window and saw an open beer container. Once at the driver's window, he recognized the driver as Brian Dennis Amick.

[¶4.] Because of the open container, the first question the deputy asked Amick was whether he had been drinking. Amick answered that he had had "a couple." A DUI investigation ensued, and Amick was arrested. It was not until later during the stop that the deputy noticed an unexpired temporary license permit in the lower right-hand corner of the pickup's rear window.

[¶5.] Amick was charged with driving under the influence in violation of SDCL 32-23-1(1). He moved to suppress the evidence obtained as a result of the stop. He argued that Deputy Mentzer was required to first look for a validly displayed temporary license permit before initiating any contact with the driver. And because the deputy should have seen a valid temporary license permit, had he looked, initiating contact with the driver was an impermissible extension of the investigatory stop. Amick also argued that the deputy's reason for the stop was unreasonable at its inception.

[¶6.] At the suppression hearing, Deputy Mentzer testified that he tried to look for a properly displayed temporary license permit. The State asked, "[I]s there a reason at least in your mind that you did not see those plates on the initial stop?" He replied, "On the initial stop from behind the - - the rear window of the vehicle was tinted, rather dark. Along with the fact that there was people sitting in the back of the pickup. I'm not positive, they - - their heads could have been blocking, was not - - was not helping the issue of being able to see." The video recording of the stop was played for the circuit court.

[¶7.] During cross-examination, Deputy Mentzer said that when he stopped Amick he saw a rear license plate bracket bearing the name and logo of "Vern Eide

Ford," which he knew to mean that the vehicle had been recently purchased. He conceded that he did not use the spotlight equipped with his vehicle to look for a temporary license permit. He repeated that he tried to shine his flashlight toward the lower right-hand corner of the rear window, but there was a passenger obstructing his view.

[¶8.] To support his claim that Deputy Mentzer would have been able to see Amick's temporary license permit, Amick offered the testimony of his father, Dennis. Dennis and Amick had reenacted the stop and sought to introduce the photographs taken from their reenactment. The court admitted the photographs over the State's objection.

[¶9.] In a bench ruling, the court granted Amick's motion to suppress. It concluded that Deputy Mentzer had an articulable reason to stop Amick's pickup. But the court found that the scope of the stop was "simply to see if there's a license plate." The court held that the deputy should have first looked for the presence of a temporary license permit in the rear window, confirmed its validity, then "[a]t that point the officer simply returns to his vehicle and the other vehicle's free to go. . . . The paper plates are readily visible from the back of the pickup, and so the search never goes any farther." Because the deputy initiated contact with Amick, the court ruled that the scope of the stop was unconstitutionally extended.

[¶10.] In the court's written findings of fact and conclusions of law, it further explained that Deputy Mentzer knew from his ordinary experience that the presence of a dealer logo plate meant that the vehicle had recently been purchased. Yet, after seeing the logo plate, the deputy did not look for a valid temporary license

-3-

permit on the lower rear area of the back window.[1] Because Deputy "Mentzer could have verified the presence and expiration date of the temporary paper permit displayed on Amick's vehicle without ever getting out of his patrol car and without approaching Amick's pickup," the court suppressed the evidence and dismissed the case.

[¶11.] On appeal, the State contends that the court erred in ruling that the stop was impermissibly extended. By notice of review, Amick argues the court erred when it ruled that Deputy Mentzer validly initiated the stop.[2]

### Analysis and Decision

[¶12.] We address Amick's notice of review issue first, because if the stop was invalid at its inception, we need not determine the constitutionality of Deputy Mentzer's actions after the stop. *See State v. Littlebrave*, 2009 S.D. 104, ¶ 11, 776 N.W.2d 85, 89. Amick contends the court erred when it concluded that there were

---

1.  Deputy Mentzer testified that a temporary license plate is "generally displayed in the lower right-hand corner of the rear window." In its findings of fact, the circuit court found that the pickup's "valid, unexpired temporary paper plates were properly displayed in the lower *right* rear window." (Emphasis added.) But under SDCL 32-6B-27, the temporary license permit must be displayed in the lower *left*-hand corner of the rear window. Because this fact was not raised below, the State chose not to raise it on appeal.

2.  "'A motion to suppress for an alleged violation of a constitutionally protected right raises a question of law, requiring de novo review.'" *State v. Hess,* 2004 S.D. 60, ¶ 9, 680 N.W.2d 314, 319 (quoting *State v. Herrmann,* 2002 S.D. 119, ¶ 9, 652 N.W.2d 725, 728 (citations omitted)); *State v. Tofani,* 2006 S.D. 63, ¶ 24, 719 N.W.2d 391, 398. Findings of fact are reviewed under the clearly erroneous standard. *Tofani,* 2006 S.D. 63, ¶ 24, 719 N.W.2d at 398. "Yet 'the application of a legal standard to those facts' is reviewed de novo." *State v. Stevens*, 2007 S.D. 54, ¶ 5, 734 N.W.2d 344, 346 (quoting *Hess,* 2004 S.D. 60, ¶ 9, 680 N.W.2d at 319 (citing *State v. Lamont,* 2001 S.D. 92, ¶ 12, 631 N.W.2d 603, 607 (citation omitted))).

reasonable and articulable facts to justify the investigatory stop of his pickup. An investigatory stop is constitutional when a law enforcement officer has specific and articulable suspicion to believe a crime was or is being committed. *See State v. Overbey*, 2010 S.D. 78, ¶ 16, 790 N.W.2d 35, 41.

[¶13.] South Dakota law prohibits operating a motor vehicle on public roads without valid and properly placed licensure. *See* SDCL 32-5-98; SDCL 32-6B-27. Here, the court found that while the deputy followed Amick's pickup, he could not see a properly displayed and valid license. It is undisputed that Amick did not have a rear license plate. *See* SDCL 32-5-98. Yet Amick had a temporary license permit in his rear window. That permit, the court found, would have been visible from approximately thirty feet away with the use of a flashlight or spotlight. Amick does not challenge these findings as clearly erroneous, nor does he claim that the deputy should have been able to confirm the validity of the permit without stopping Amick's pickup. Thus, the court did not err when it ruled that the initial stop of Amick's pickup was based on reasonable and articulable suspicion that Amick's pickup was without a license.

[¶14.] We next address the State's argument that the circuit court erred when it ruled that Deputy Mentzer unconstitutionally extended the scope of the stop. The State claims that, contrary to the court's findings, the deputy did look for a temporary license permit in the lower corner of the rear window, but was prevented from doing so "possibly because the passenger in the pickup blocked his view of the back window of the pickup." We review a court's findings of fact for clear error. *Tofani,* 2006 S.D. 63, ¶ 24, 719 N.W.2d at 398. The court made no

specific findings on whether the deputy's view of the temporary license permit was blocked by the people sitting in the pickup box. Nonetheless, by finding that the deputy would have been able to see the temporary license permit from at least thirty feet away had he shined his flashlight or vehicle spotlight on the rear window, the court in effect rejected the deputy's testimony that he was prevented from viewing the permit because his view was obstructed. The video recording does not contradict the court's findings, and the State presented no further evidence that the deputy's view was blocked. Thus, the court's findings and credibility determination were not clearly erroneous.

[¶15.] The State next argues that even if Deputy Mentzer could have confirmed the validity of the temporary license permit before talking to Amick, he was authorized to, at a minimum, approach Amick, explain the reason for the stop, and tell Amick he was free to go on his way. Amick responds that the deputy was not authorized to make any contact with him after the moment the deputy should have confirmed the validity of the temporary license permit. Amick believes the deputy was required to turn around, walk back to his patrol car, and drive away.

[¶16.] "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *State v. Ballard*, 2000 S.D. 134, ¶ 11, 617 N.W.2d 837, 841 (quoting *Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325-26, 75 L. Ed. 2d 229 (1983) (citations omitted)). And an officer's actions during the stop must be "'reasonably related in scope to the circumstances that justified the interference in the first place.'" *United States v. Bloomfield*, 40 F.3d 910, 915 (8th Cir. 1994) (quoting *United States v. Cummins*, 920 F.2d 498, 501

(8th Cir. 1990)). Once the reason for detaining an individual has evaporated, the "'officer must allow the driver to proceed without further constraint.'" *State v. Hayen*, 2008 S.D. 41, ¶ 7, 751 N.W.2d 306, 309 (quoting *Ballard*, 2000 S.D. 134, ¶ 12, 617 N.W.2d at 841) (additional citation omitted).

[¶17.] In *Hayen*, the officer stopped a vehicle on suspicion that its temporary license permit had expired. *Id.* ¶ 1. Like here, the officer in *Hayen* made no effort to confirm the validity of the permit before talking to the driver. *See id.* ¶ 2. Because the officer could have dispelled his suspicion before talking to Hayen, we held that the officer unconstitutionally expanded the scope of the stop by asking Hayen for his license and proof of insurance. *Id.* ¶ 13.

[¶18.] In this case, however, we are asked to decide to what extent an officer can continue to detain a driver after the reason for the initial stop has been dispelled. Does the fact that an officer cannot ask a driver for his license and proof of insurance after the suspicion justifying the stop has evaporated also mean that an officer cannot approach or initiate contact with a driver in any manner? In *Hayen*, we cited *United States v. McSwain*, 29 F.3d 558, 562 (10th Cir. 1994) for the rule that, even when the reason for the stop is dispelled, as a matter of courtesy, an officer may approach a driver and explain the reason for the initial stop. 2008 S.D. 41, ¶ 12, 751 N.W.2d at 310-11. Yet this language from *McSwain* was dicta. *See* 29 F.3d at 561-62.

[¶19.] A few courts have directly decided what a law enforcement officer is permitted to do when the reasonable suspicion warranting the initial stop has been dispelled and no further reasonable and articulable suspicion of criminal activity

exists.[3] The prevailing view is in line with *McSwain's* proposition: an officer, having stopped a vehicle on the basis of a reasonable and articulable suspicion of a violation, may continue the detention to approach the driver and explain the mistaken reason for the stop. For these courts, the opposite conclusion would not only be impractical but would require absurd police conduct.[4] As one court explained, "[d]rivers should not be left to wonder why they were stopped, nor should they have to experience the fear or confusion, however fleeting, that may result from a lack of explanation." *See Morris,* 259 P.3d at 124. On seeing a lawful license, simply turning and walking away "would be impractical." *Lopez*, 631 N.W.2d at 813.

[¶20.] Fourth Amendment analysis measures "'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *See Pennsylvania v. Mimms*, 434 U.S. 106, 109, 98 S. Ct. 330, 332, 54 L. Ed. 2d 331 (1977) (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S. Ct. 1868, 1878-79, 20 L. Ed. 2d 889 (1968)). Indeed, "[t]he Fourth Amendment does not protect against all searches and seizures, but only against unreasonable searches and seizures."

---

3. *State v. Morris*, 259 P.3d 116, 124 (Utah 2011); *see also United States v. Jenkins*, 452 F.3d 207, 214 (2d Cir. 2006); *People v. Bartimo*, 803 N.E.2d 596, 603-04 (Ill. App. Ct. 2004) (citing *People v. Adams*, 587 N.E.2d 592, 593 (Ill. App. Ct. 1992)); *Commonwealth v. Garden*, 883 N.E.2d 905, 909 (Mass. 2008), *superseded by statute on other grounds*; *State v. Lopez*, 631 N.W.2d 810, 813-14 (Minn. Ct. App. 2001).

4. In an unpublished decision, an Arizona appellate court relied on a now-reversed Utah Court of Appeals case to hold that an officer cannot initiate contact with a driver in any fashion. *Arizona v. Condit*, 2011 W.L. 1086885 (citing *State v. Morris*, 214 P.3d 883, 888 (Utah Ct. App. 2009), *rev'd by State v. Morris*, 259 P.3d 116 (Utah 2011)).

*State v. Deneui*, 2009 S.D. 99, ¶ 13, 775 N.W.2d 221, 229 (citing *United States v. Sharpe*, 470 U.S. 675, 682, 105 S. Ct. 1568, 1573, 84 L. Ed. 2d 605 (1985)). Accordingly, we conclude that when an officer stops a vehicle based on objectively reasonable suspicion of illegal activity, and the officer's suspicion is dispelled, the officer may nonetheless approach the driver and explain the mistake. But the scope of this brief interaction must be limited and continue only long enough for the officer to speak to the driver. *See Morris*, 259 P.3d at 124. "[T]he officer may not ask for identification, registration, or proof of insurance at this time unless during this brief encounter, new reasonable suspicion of criminal activity *immediately* arises that justifies further detention." *Id.*

[¶21.]		We now examine Deputy Mentzer's conduct in detaining Amick after he should have confirmed the validity of the temporary license permit. The video recording of the stop shows that less than thirty-five seconds passed from the time the deputy stopped Amick until he first initiated contact. Deputy Mentzer exited his patrol car, walked toward the pickup, shined his flashlight at the pickup several times, and stopped at Amick's window. Although the deputy did not specifically examine the temporary license permit, his continued detention of Amick was neither unreasonably long nor unlawful in scope. *See id.* Moreover, because the deputy observed the open beer bottle in the backseat area of the pickup as he approached Amick, the deputy had facts independent of the initial stop to justify a continued detention to investigate the new suspicion of criminal activity. Thus, it was error for the circuit court to suppress the evidence gathered as a result of the stop and to order dismissal of the case.

[¶22.]        Affirmed in part, reversed in part, and remanded.

[¶23.]        GILBERTSON, Chief Justice, and ZINTER, SEVERSON, and

WILBUR, Justices, concur.