Tufte, Justice.
 

 [¶ 1] Sandon Erickson appeals from the district court's criminal judgment and order denying his motion to suppress. We affirm, concluding that extension of the stop for an explanation did not transform the stop into an unconstitutional seizure.
 

 I
 

 [¶ 2] In April 2017, Deputy Taylor Schiller was patrolling in an area north of Rugby, looking for a brown or tan Ford SUV that had been reported stolen. Deputy Schiller saw a vehicle matching that description. The SUV was actually maroon, but Deputy Schiller testified it initially appeared to be tan because it was covered with dirt and road dust. This vehicle pulled over and came to a stop without a signal to stop from Deputy Schiller. Deputy Schiller pulled over as well, exited his squad car, and attempted to contact the driver. Before he made contact with the driver, the SUV drove away. Deputy Schiller was unable to read the license plate number of the SUV at that time.
 

 [¶ 3] Deputy Schiller returned to his squad car and activated his emergency
 
 *915
 
 lights. After the SUV again pulled over, Deputy Schiller exited his vehicle to make contact with the driver. Prior to making contact, he read the license plate number and noted that it did not match the license plate number of the stolen SUV. As he continued to approach the vehicle, Deputy Schiller recognized the driver as Erickson. Because of their prior contacts, he knew Erickson had a suspended license. Deputy Schiller also saw an open case of Keystone Light beer in the front-seat passenger side of Erickson's vehicle. He then informed Erickson that he had stopped him pursuant to a stolen vehicle investigation. Deputy Schiller testified he could detect the odor of alcohol, and he arrested Erickson for driving under the influence.
 

 [¶ 4] Erickson moved to suppress evidence obtained after the deputy read the plate and ruled out the vehicle as stolen. The district court denied Erickson's motion.
 

 II
 

 [¶ 5] Erickson argues that because the stop was unreasonably extended, the district court erred by denying his motion to suppress. "We will affirm a district court's decision on a motion to suppress if there is sufficient competent evidence fairly capable of supporting the district court's findings, and the decision is not contrary to the manifest weight of the evidence."
 
 State v. Westmiller
 
 ,
 
 2007 ND 52
 
 , ¶ 7,
 
 730 N.W.2d 134
 
 . There are no material factual disputes. "Questions of law are fully reviewable on appeal, and whether the findings of fact meet a legal standard is a question of law."
 

 Id.
 

 [¶ 6] Erickson argues that the stop was unreasonably extended once Deputy Schiller realized Erickson's license plate number did not match that of the stolen vehicle. Erickson contends that at that point, the purpose of the stop had been completed and any further detainment, including Deputy Schiller's approaching the stopped vehicle and providing him an explanation for the stop, was unconstitutional.
 

 [¶ 7] A stop becomes improper if the original purpose of the stop ceases and the officer no longer has reasonable suspicion of another crime.
 
 State v. Fields
 
 ,
 
 2003 ND 81
 
 , ¶ 10,
 
 662 N.W.2d 242
 
 .
 

 The duration of the investigatory detention may continue "as long as reasonably necessary to conduct [the officer's duties resulting from the traffic stop] and to issue a warning or citation." When the original purpose of the traffic stop is complete, the officer must have a reasonable suspicion that criminal activity is afoot to continue the detention.
 

 State v. Adan
 
 ,
 
 2016 ND 215
 
 , ¶ 11,
 
 886 N.W.2d 841
 
 (citation omitted);
 
 Florida v. Royer
 
 ,
 
 460 U.S. 491
 
 , 500,
 
 103 S.Ct. 1319
 
 ,
 
 75 L.Ed.2d 229
 
 (1983) (stating that "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop").
 

 [¶ 8] Here, Deputy Schiller had reasonable suspicion to stop Erickson. Like the stolen vehicle, Erickson's vehicle was a Ford SUV. Erickson was driving in the Rugby area, where the vehicle had been reported stolen. Although the stolen vehicle was reportedly brown or tan and Erickson's was maroon, Erickson's vehicle was dirty from traveling on gravel roads and as a result appeared tan in color. Erickson does not contest the initial stop.
 

 [¶ 9] Deputy Schiller exited his vehicle and had approached the vehicle on foot before he was able to read the number on the dirty license plate. After Deputy
 
 *916
 
 Schiller determined that Erickson's license plate did not match that of the stolen vehicle, he no longer had reasonable suspicion that Erickson was driving the stolen vehicle. The State does not appear to argue that the stop was justified because Erickson had committed a traffic offense or that Deputy Schiller had reasonable suspicion of another crime either before or immediately after realizing the license plate did not match the stolen vehicle's. Instead, the State argues that Deputy Schiller was allowed to contact Erickson to explain the reason for the stop.
 

 [¶ 10] In a South Dakota case, an officer stopped a vehicle for failure to display a rear license plate.
 
 State v. Amick
 
 ,
 
 2013 S.D. 37
 
 , ¶ 2,
 
 831 N.W.2d 59
 
 . As he approached the driver, he saw an open beer bottle in the vehicle.
 
 Id.
 
 at ¶ 3. The officer eventually noticed an unexpired temporary license permit on the vehicle's rear window.
 
 Id.
 
 at ¶ 4. The driver was ultimately arrested and charged with driving under the influence.
 
 Id.
 
 at ¶¶ 4-5. The driver moved to suppress evidence obtained as a result of the stop, arguing the officer was required to look for a valid temporary permit before making contact with the driver.
 
 Id.
 
 at ¶ 5. The district court granted the motion, holding that the officer "should have first looked for the presence of a temporary license permit in the rear window, confirmed its validity, then '[a]t that point the officer simply returns to his vehicle and the other vehicle's free to go ....' "
 
 Id.
 
 at ¶ 9. On appeal, the Supreme Court of South Dakota reversed on this issue, concluding:
 

 [W]hen an officer stops a vehicle based on objectively reasonable suspicion of illegal activity, and the officer's suspicion is dispelled, the officer may nonetheless approach the driver and explain the mistake. But the scope of this brief interaction must be limited and continue only long enough for the officer to speak to the driver. "[T]he officer may not ask for identification, registration, or proof of insurance at this time unless during this brief encounter, new reasonable suspicion of criminal activity
 
 immediately
 
 arises that justifies further detention."
 

 Id.
 
 at ¶ 20 (citation omitted);
 
 see also
 

 State v. Morris
 
 ,
 
 2011 UT 40
 
 , ¶ 25,
 
 259 P.3d 116
 
 (stating, "Drivers should not be left to wonder why they were stopped, nor should they have to experience the fear or confusion, however fleeting, that may result from a lack of explanation."). Applying
 
 Amick
 
 , Deputy Schiller was not constitutionally required to leave immediately upon realizing Erickson's license plate did not match that of the stolen vehicle. He was allowed to make contact with Erickson and explain the reason for the stop.
 

 [¶ 11] Erickson argues his case is analogous to
 
 State v. Jones
 
 ,
 
 2014-Ohio-496
 
 ,
 
 2014 WL 585114
 
 (Ohio Ct. App. 2014). Jones was stopped because his vehicle had an obstructed license plate.
 
 Id.
 
 at ¶ 2. Detective Wohlheter "walked to the rear of the vehicle where he was able to read the entire license plate."
 
 Id.
 
 at ¶ 3. "At the same time, Officer Gantt brought Jones to the rear of Jones' vehicle and handed to Detective Wohlheter Jones' state identification card."
 
 Id.
 
 After confirming that Jones' driver's license was suspended and he was not the registered owner of the vehicle, the officers inventoried the vehicle in preparation to be towed.
 
 Id.
 
 at ¶¶ 3-4. They found a bag containing what appeared to be crack cocaine, and arrested Jones.
 
 Id.
 
 at ¶ 4. Jones moved to suppress, arguing that the evidence showed his rear license plate was not obstructed and thus "the officers had no reason to stop him and
 
 *917
 
 ask for his driver's license."
 
 Id.
 
 at ¶ 5. The trial court granted the motion, and the Court of Appeals of Ohio affirmed, relying on two previous decisions with similar facts.
 
 Id.
 
 at ¶¶ 6, 14-15. In
 
 Chatton
 
 , the Ohio Supreme Court concluded:
 

 [W]here a police officer stops a motor vehicle which displays neither front nor rear license plates, but upon approaching the stopped vehicle observes a temporary tag which is visible through the rear windshield, the driver of the vehicle may not be detained further
 
 to determine the
 

 validity of his driver's license
 
 absent some specific and articulable facts that the detention was reasonable.
 

 State v. Chatton
 
 ,
 
 11 Ohio St.3d 59
 
 ,
 
 463 N.E.2d 1237
 
 , 1240-41 (1984) (emphasis added). In
 
 Shelton
 
 , the Court of Appeals of Ohio concluded:
 

 Once [the officer] could read the license plate, he no longer had any reason to detain Shelton for an [operating a vehicle under the influence] investigation and should have sent him on his way. In accord with
 
 Chatton
 
 , [the officer], as a matter of courtesy, could have explained to Shelton the reason he was initially detained, but he could not "unite the search to this detention."
 

 Lakewood v. Shelton
 
 ,
 
 2011-Ohio-4408
 
 , ¶ 22,
 
 2011 WL 3860510
 
 (Ohio Ct. App. 2011).
 

 [¶ 12] In
 
 Jones
 
 , after Detective Wohlheter was able to view the license plate number, and without any further reasonable suspicion, Jones was brought to the rear of his vehicle and admitted he did not have a valid license. The officers confirmed that his license was suspended. Here, Deputy Schiller did not demand anything further of Erickson until he developed reasonable suspicion of a new offense-driving with a suspended license or driving under the influence of alcohol. Thus,
 
 Jones
 
 is not analogous to this case. In fact,
 
 Shelton
 
 , which
 
 Jones
 
 relied upon, notes that an officer can approach a driver to explain the reason he was pulled over, absent any additional reasonable suspicion. Finding
 
 Amick
 
 persuasive and
 
 Jones
 
 distinguishable, we conclude that Deputy Schiller's approach of Erickson to explain the reason for the stop was constitutional. A deputy does not unreasonably prolong a traffic stop by approaching the driver to explain the reason for the initial stop and release the driver to continue his travels. To require that the deputy turn around after reading the license plate and drive off without explanation, as Erickson argues, would not hasten the end of the stop from the driver's point of view. It would only leave the driver uncertain as to why he had been expressly required to stop and then implicitly released by the deputy's unexplained departure. Under the Fourth Amendment, ending a stop with "you're free to go" may not be required, but neither is it prohibited. Deputy Schiller approached to briefly explain the stop and expressly release Erickson, which we conclude is reasonable under the Fourth Amendment.
 

 [¶ 13] Upon approaching Erickson's vehicle, Deputy Schiller immediately developed reasonable suspicion to prolong the stop for other purposes. First, upon recognizing Erickson, Deputy Schiller knew that Erickson had a suspended license. Second, there were indications that Erickson was driving under the influence of alcohol: an open case of beer and an odor of alcohol. Thus, Deputy Schiller had reasonable suspicion to extend the stop beyond explaining the initial suspicion of a stolen vehicle and into an investigation of driving under suspension and driving under the influence.
 

 *918
 
 III
 

 [¶ 14] Because extension of the stop for an explanation did not transform the stop into an unconstitutional seizure, we affirm the criminal judgment and the order denying Erickson's motion to suppress.
 

 [¶ 15] Jerod E. Tufte
 

 Daniel J. Crothers
 

 Lisa Fair McEvers
 

 Jon J. Jensen
 

 Gerald W. VandeWalle, C.J.